THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ARMANDO PEREZ, JR., *et al.*, Defendants-Appellants.

Second District   Nos. 2—92—0002, 2—92—0003 cons.

Opinion filed September 7, 1993.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellants.

James E. Ryan, State's Attorney, of Wheaton, Brian L. Buzard, of Mt. Morris, and Teresa Berge, of Ottawa (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Following a bench trial in the circuit court of Du Page County, defendants, Armando Perez and Norman Campbell, were found guilty of armed robbery (Ill. Rev. Stat. 1991, ch. 38, par. 18—2(a) (now 720 ILCS 5/18—2(a) (West 1992))) and aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(1) (now codified, as amended, at 720 ILCS 5/12—4(b)(1) (West 1992))). The sole issue raised on appeal is whether the trial court erred in denying defendants' motion to quash arrest and suppress evidence, finding that the police personnel investigating this case had a reasonable and articulable basis for executing a stop of defendants' vehicle.

At the suppression hearing, Brian L. De Young, a police officer for the Village of Burr Ridge, testified that at approximately 12:35 a.m. on May 31, 1991, he was parked in his squad car at the Burr Ridge police station when he received a dispatch call of an armed robbery in progress at the Best Western Hotel. De Young stated that the Burr Ridge station is located on County Line Road approximately 200 yards south of the intersection of Frontage Road and County Line Road. The Best Western Hotel was located on Frontage Road about one-fourth mile, or two blocks, west of that same intersection. De Young testified that two office buildings and a funeral home were also located in that area, but the hotel was the only business open at that time of night.

As he was leaving the station, De Young spotted a Toyota/Nissan-type vehicle stopped at the intersection of Frontage Road and County Line Road. This vehicle had come from the direction of the Best Western Hotel. The vehicle turned from eastbound Frontage Road onto northbound County Line Road. De Young lost sight of the vehicle as it travelled north. This vehicle was the only one De Young saw on the road as he drove to the hotel. De Young testified that an entrance ramp to southbound I-55 is located on County Line Road just to the north of the Frontage Road intersection.

De Young proceeded on to the Best Western Hotel, arriving within a minute or two after he received the initial dispatch. De Young did not see anyone inside the office through the front windows. He was then told by the dispatcher that she had the victims on the telephone and the perpetrators had just left.

De Young responded by turning his vehicle around and proceeding back to County Line Road. He informed dispatch of the vehicle he had seen earlier, describing it as a Toyota or Nissan-type vehicle, possibly gray in color, believed headed northbound on County Line Road to

southbound I-55. De Young testified that the vehicle could not have headed northbound on I-55 because that exit had been blocked. De Young proceeded northbound on County Line Road in an attempt to locate the vehicle in case it had not gotten onto southbound I-55. While he drove north on County Line Road to Plainfield Road, De Young encountered only one other vehicle.

The dispatcher obtained and radioed a general description of the robbery suspects: one male black and one male Hispanic. At approximately 12:34 a.m. on May 31, 1991, Patty Pasakarnis, police officer for the City of Darien, received a dispatch concerning the robbery in progress in Burr Ridge. She knew that southbound I-55 was easily accessible from the hotel, and she parked along the shoulder of I-55 so she could monitor passing traffic. The location she chose was five to seven miles from the County Line Road entrance to I-55 and was well lit by artificial lighting. She was radioed the description of the vehicle seen leaving the area and the general description of the suspects, and she watched for a vehicle and suspects that matched that description.

Approximately 10 minutes after she had taken up her position, she spotted a Nissan with a male black driver and a male Hispanic passenger. Pasakarnis proceeded after the vehicle. Pasakarnis testified that the color of defendants' Nissan was actually brown instead of gray, but she noted that "due to the night time and the glare from the lights, you can't really tell the color, unless it is say a bright red or yellow, until you get directly up to it." She also testified that during the period of time she was parked on I-55 one car passed her position every 10 to 15 seconds. Pasakarnis stated that she had observed a possible total of 30 to 50 cars before seeing defendants' car.

Pasakarnis followed the vehicle southbound on I-55 toward northbound I-355, and then onto northbound I-355. During this time she pulled up next to the suspect vehicle and verified that the occupants of the vehicle matched the general description she had received. Pasakarnis then backed off and activated her squad's Mars lights and spotlight in an attempt to stop the suspect vehicle. As she did this, she observed the passenger reach over and make a lot of movements towards the backseat of the car. Defendants disputed this observation during their testimony. The vehicle finally pulled over on I-355 just past Broughton Road. Guns and money were eventually discovered under the backseat of the vehicle, and De Young identified the vehicle as the one he had seen leaving the area of the hotel.

The trial court noted in its findings of fact that an armed robbery occurred at the Best Western Hotel, and within one minute the police arrived. At the time the officer approached the hotel, it was very late

and there was little traffic. Officer De Young made a note of the only vehicle he saw in the area and that its direction of travel would take it either southbound on I-55 or farther north on County Line Road. A very generic description of the robbery suspects was sent out by the dispatch as well as a description of the vehicle. A few minutes later, Officer Pasakarnis observed a similar sedan whose occupants matched the general description of the suspects. The court concluded that at that point there were articulable facts which, taken together with reasonable inferences, justified an investigatory stop of defendants' vehicle. The trial court accordingly denied defendants' motions to quash arrest and suppress the evidence. Defendants were subsequently found guilty of the charges at a bench trial.

On appeal defendants challenge the trial court's ruling that there was a reasonable, articulable basis for stopping defendants' vehicle. Defendants assert that the stop was based merely on "a lucky guess" and was not the product of reasonable suspicion.

As a general rule, the law provides that each case must be decided on its own facts, and a trial court's ruling on a motion to suppress will not be disturbed unless it was manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162; *People v. Clark* (1982), 92 Ill. 2d 96, 99; *People v. Frazier* (1993), 248 Ill. App. 3d 6, 12; *People v. Bujdud* (1988), 177 Ill. App. 3d 396, 401.) A police officer may stop and temporarily detain an individual for the purpose of a limited investigation if the officer is able to point to specific, articulable facts which, taken together with reasonable inferences drawn from the officer's experience, would reasonably justify the investigatory intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884-85; see also 725 ILCS 5/107—14 (West 1992).) To determine whether an investigatory stop was based upon a reasonable, articulable suspicion of criminal activity, an objective standard must be applied (*Bujdud*, 177 Ill. App. 3d at 401), and a mere hunch or general suspicion is insufficient (*People v. Eyler* (1985), 132 Ill. App. 3d 792, 800). (*Frazier*, 248 Ill. App. 3d at 13.) A stop is proper only if the facts available to the officer would warrant a person of reasonable caution to believe that the action taken was appropriate. (*Frazier*, 248 Ill. App. 3d at 13-14; *Bujdud*, 177 Ill. App. 3d at 401.) When viewed as a whole, the facts and inferences relied upon must lead to the conclusion that the situation is so far removed from the ordinary that any competent police officer would be expected to act quickly to maintain the status quo, rather than observe the situation further. *People v. McGowan* (1977), 69 Ill. 2d 73, 78; *Frazier*, 248 Ill. App. 3d at 14.

Defendants initially argue that the "furtive" movements Pasakarnis observed after she activated her Mars lights and floodlight cannot be considered as supporting the asserted reasonable, articulable suspicion for the traffic stop because a "seizure," within the meaning of the fourth amendment (U.S. Const., amend. IV), had already occurred when she activated the lights. "It is only at the point a seizure occurs that the fourth amendment is implicated (*People v. Clark* (1989), 185 Ill. App. 3d 231, 235-36 \*\*\*) and when the police officer is required to have a particularized and objective basis for suspecting the person of criminal activity (*Michigan v. Chesternut* (1988), 486 U.S. 567, 576, 100 L. Ed. 2d 565, 573, 108 S. Ct. 1975, 1981)." *People v. Erby* (1991), 213 Ill. App. 3d 657, 661-62.

■ Not all personal interaction between the police and a citizen constitutes a seizure, and only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen has a seizure occurred. (*Chesternut*, 486 U.S. at 573, 100 L. Ed. 2d at 571, 108 S. Ct. at 1979, citing *Terry*, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16; *People v. Long* (1983), 99 Ill. 2d 219, 229; *People v. Graves* (1990), 196 Ill. App. 3d 273, 277.) As recognized by the United States Supreme Court, a show of authority alone does not always constitute a seizure if the subject refuses to yield to that authority: .

> "The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. \*\*\* It does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure. \*\*\* An arrest requires *either* physical force \*\*\* *or*, where that is absent, *submission* to the assertion of authority." (Emphasis in original.) *California v. Hodari D.* (1991), 499 U.S. 621, 626, 113 L. Ed. 2d 690, 697, 111 S. Ct. 1547, 1550-51.

This is not to say that a show of force alone can never constitute a seizure; the question is one of degree. As noted by the United States Supreme Court in *Brower v. County of Inyo* (1989), 489 U.S. 593, 103 L. Ed. 2d 628, 109 S. Ct. 1378, a show of authority, such as the pursuit of a car with flashing lights or a police officer on the roadway signalling an oncoming car to stop, which is merely designed to induce a voluntary stop, differs markedly from a show of authority, such as a roadblock, which is designed to produce a stop if voluntary compliance does not occur. The latter constitutes a fourth amendment "seizure" while the former will not, absent a submission to authority.

(See *Brower*, 489 U.S. at 598-99, 103 L. Ed. 2d at 636-37, 109 S. Ct. at 1382; accord *Erby*, 213 Ill. App. 3d at 661-63; *Graves*, 196 Ill. App. 3d at 277-78.) If, in the present case, defendants did not immediately yield to Pasakarnis' signal, and the vehicle continued on its course for a period of time while defendant Perez made various "furtive" movements, then no seizure occurred until the vehicle began to yield and Pasakarnis' observations during that time could be properly considered in determining the validity of the stop.

■ Officer Pasakarnis had set up a surveillance on a main highway leading away from the scene of a recent crime. She had been informed by dispatch of the suspects' general description as well as that of the only vehicle seen leaving the area. Police officers are entitled to act upon information received in official communications. (*People v. Taggart* (1992), 233 Ill. App. 3d 530, 548; *People v. Brown* (1980), 88 Ill. App. 3d 514, 519.) Additionally, the suspect vehicle was believed to be headed either southbound on I-55 or northbound on County Line Road. Officer De Young's unsuccessful attempt to locate the suspect vehicle on County Line Road reinforced the investigative team's suspicion that the car had turned onto southbound I-55. (See *People v. Fenner* (1989), 191 Ill. App. 3d 801, 806 (information collectively received by officers acting in concert in investigating a crime may be used to establish reasonable suspicion to stop even if not known to the officer initiating the stop).) It was approximately 10 minutes after Pasakarnis received the dispatch concerning the armed robbery and took up her position along the roadside when she spotted defendants' vehicle. Given Pasakarnis' distance from the hotel, the suspect vehicle could reasonably have been expected to pass her location approximately at the time she observed defendants' vehicle if it had in fact gone south on I-55. This, coupled with the facts that the vehicle type matched the one described and its occupants matched the general description of the perpetrators, provided Pasakarnis with a sufficient basis for the minimal intrusion of an investigatory stop even if the passenger's furtive or suspicious movements were not considered. It is well established that a reasonable suspicion supporting an investigatory stop can be derived, in part, from observing suspects similar to those believed fleeing from a recent crime when the observed suspects are located in the general area where the fleeing suspects would be expected to be given the time of the crime and the distance from the crime scene. See, *e.g., People v. Lippert* (1982), 89 Ill. 2d 171; *People v. Starks* (1989), 190 Ill. App. 3d 503; *People v. Jackson* (1986), 145 Ill. App. 3d 789; *Brown*, 88 Ill. App. 3d at 519-20; *People v. Grice* (1980), 87 Ill. App. 3d 718.

Defendants argue that there was no articulable basis for Pasakarnis to conclude that their vehicle was the same one spotted leaving the area of the crime scene because its color varied from that indicated by De Young. Pasakarnis offered the explanation, however, that it was difficult accurately to discern a vehicle's color at night from a distance. It is the function of the trial court on a motion to suppress to evaluate the credibility of the witnesses, weigh their testimony, and determine the inferences to be drawn therefrom. (*Galvin*, 127 Ill. 2d at 163; *Taggart*, 233 Ill. App. 3d at 547.) Officer Pasakarnis was entitled to act upon reasonable, articulable suspicions. The fact that she was given only a general description of the vehicle and the suspects did not preclude the trial court, having heard the testimony and viewed the demeanor of the witnesses, from concluding that she had acted in accordance with the law given the entirety of the circumstances. The evidence provided support for the trial court's decision.

For the foregoing reasons, we hold that the trial court's ruling was not manifestly erroneous, and the judgment of the circuit court of Du Page County is hereby affirmed.

Affirmed.

UNVERZAGT and McLAREN, JJ., concur.