THE VILLAGE OF MUNDELEIN, Plaintiff-Appellant, v. ROBERT C. THOMPSON, Defendant-Appellee.

Second District  No. 2—02—0376

Opinion filed July 17, 2003.

Lawrence R. LaLuzerne, of Smith & LaLuzerne, Ltd., of Waukegan, for appellant.

Larry A. Davis, of Des Plaines, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

The Village of Mundelein appeals from an order of the circuit court of Lake County suppressing evidence obtained as a result of an allegedly illegal investigatory stop of defendant, Robert C. Thompson, and rescinding the statutory summary suspension of defendant's driver's license, pursuant to section 11—501.1 of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501.1 (West 2000)), for driving under the influence of alcohol. We dismiss the appeal of the portion of the order suppressing evidence and reverse the portion of the order rescinding the summary suspension.

The parties purportedly stipulated to a statement of facts for use at the suppression hearing. Both parties filed memoranda of law prior to the hearing, each of which contained a section entitled "Stipulated Facts" that referred to a transcript of a dispatch tape from the Mundelein police department. The two statements of stipulated facts are not identical, and, in fact, vary significantly in their phrasing at the critical juncture. There is no indication that any other evidence was presented. We therefore take the sequence of events from the points at which the statements agree, except that for the critical events we provide both the Village's and defendant's statements.

On December 7, 2001, shortly after 2 a.m., a male caller contacted

the Mundelein police department to report that he was "following a guy in a van who seems to be drunk" and that the van was "all over the road." He described the van and provided its full license plate number. The dispatcher radioed a message to Officer Kaplan of the Mundelein police department with a description of the van and its license number.

Beyond this, defendant states:

"The dispatcher then continues the conversation with the person who is still at this time unidentified who indicates 'they got him right now. They are right behind him.' At this time Officer Lechner (who has heard the dispatch to Officer Kaplan) *** attempts to stop the vehicle as the caller provides the dispatcher with his name and address commenting at the same time 'Man, this guy's refusing to stop.' At the request of the dispatcher, the caller then goes on to provide the dispatcher an address and phone number."

There is no indication of when the van actually pulled to the side of the road, nor is there discussion of whether defendant ever acknowledged the police by means other than pulling over.

The Village states:

"At 2:12:15 the dispatcher continues on with their conversation with the caller to get an update on their location. When the caller advises that they are just passing Family Video, the dispatcher confirms that information. The caller then states, 'They got him right now. They are right behind him.' *** When the dispatcher advises the caller to confirm that it is a minivan, the caller states, 'Yeah, he's right behind him now. I'm in a wrecker.' Officer Lechner eventually stops the defendant's minivan on Route 83 south of Midlothian Road. (The Village would ask the Court to take judicial notice that the distance from Hawley Street and Gilmer Road to Route 83 and Midlothian Road is approximately 3.1 miles.)

At this point, the dispatcher asks the caller for his name and address. While giving his address, the caller states 'Man, this guy's refusing to stop.' After giving his name and address the caller advises the dispatcher, 'I'm going to standby, behind in case.' "

Defendant, the driver of the van, was eventually arrested and charged with driving under the influence of alcohol.

Defendant filed a motion to quash his arrest and suppress the evidence derived from it and a petition to rescind the statutory summary suspension of his driver's license. On March 15, 2002, the circuit court granted both. It recited that the parties had stipulated to the facts and to the transcript of the dispatch tape, and it ruled that all information available to the Mundelein dispatcher could be imputed to the arresting officer. It further ruled:

"The dispatcher *** failed to obtain sufficient information prior to

and up to the initiation of the stop \*\*\* including, but not limited to the fact that the dispatcher failed to obtain, at that time, identification of the anonymous caller or verification of his identity or other information so as to provide sufficient indicia of reliability as to warrant a Terry stop of the defendant's vehicle."

The Village filed its notice of appeal from this order on April 5, 2002. On July 11, 2002, the parties filed an "Agreed Statement of Facts," which differs in critical detail from the two versions of "stipulated facts" presented to the trial court by defendant and the Village. The parties' posttrial statement acknowledges the transcript of the dispatch tape, but does not stipulate "to the times or sequence as shown by the transcript."

■ We first must consider what facts are before us in this matter. An agreed statement of facts, in lieu of a report of proceedings, is a proper method of placing facts into the appellate record. 166 Ill. 2d R. 323. In general, we are forced to assume that the adversarial process results in an agreed statement with a fair semblance to the reality of what took place below. In this case, however, we can be certain that something has gone awry. The trial court ruled on the basis of the two statements of "stipulated facts" and both of these are available to us. Now the parties have attempted to present us with a *third* set of purported facts that is clearly at variance from the first two. We do not believe that the parties consciously attempted to manipulate the facts to reframe the legal issues before us, but that would be the result of our acceptance of the agreed statement. We will not knowingly allow the parties to present facts and issues not before the trial court. See *Tekansky v. Pearson*, 263 Ill. App. 3d 759, 763-64 (1994) (refusing to consider facts not contained in the record on appeal). We therefore strike the agreed statement of facts and proceed on the basis of the documents that were before the trial court.

■ We next consider the scope of our jurisdiction. A reviewing court has an independent duty to insure that jurisdiction is proper in both civil and criminal cases (*People v. O'Connor*, 313 Ill. App. 3d 134, 135 (2000)), and thus we treat issues of jurisdiction regardless of whether either party has raised them. The Village states that this court has jurisdiction over the appeal of the suppression order pursuant to Supreme Court Rule 604(a) (188 Ill. 2d R. 604(a)) and over the rescission of the summary suspension pursuant to Supreme Court Rule 303 (155 Ill. 2d R. 303).

■ Supreme Court Rule 604(a) allows the *State* to pursue interlocutory appeals of certain orders in criminal cases, including those for suppression of evidence, when the substantive effect of the order is a dismissal of the charge. This court has construed Rule 604(a) to apply

only to appeals brought by the State proper in criminal proceedings, and not to appeals brought by municipalities. *Village of Cary v. Pavis,* 171 Ill. App. 3d 1072 (1988).

However, this court has held that when, pursuant to section 16—102 of the Code (625 ILCS 5/16—102 (West 2000)), a municipal attorney prosecutes a violation of the Code with written permission of the State's Attorney, the municipal attorney is acting as the State, and an appeal under Rule 604(a) will lie. *City of Highland Park v. Lee,* 291 Ill. App. 3d 48, 49-50 (1997).

Thus, when a municipality brings an appeal pursuant to Rule 604(a), the jurisdictional statement should include the fact that the prosecution was brought pursuant to some section of the Code and that the municipal attorney has the written authority of the State's Attorney to bring such prosecutions. There is no such statement in the Village's brief.

■ In this case, the only indication of whether the prosecution was pursuant to the Code or some equivalent ordinance is the citation issued to defendant. The uniform citation form has check boxes indicating various sections of the Code. Under this are two more check boxes, "ILCS" and "local ordinance." Next to the "local ordinance" box is a space for the local ordinance citation. The "local ordinance" box is checked, but there is no citation to any ordinance. Lacking a clearer indication, we take this to indicate an intent to prosecute under a local ordinance. *Village of Cary* controls as to the appeal of the suppression order, and thus this court lacks jurisdiction over the appeal of that portion of the order.

■ The Village has also appealed the rescission of defendant's summary suspension. A trial court's decision to grant or deny a petition to rescind a summary suspension is treated as a final order in a civil matter which is appealable under Rule 303. *O'Connor,* 313 Ill. App. 3d at 136. We thus have jurisdiction to review the rescission. We note that our dismissal of the Village's appeal from the suppression order is not a decision on the merits of whether the traffic stop was proper. Therefore, our dismissal of the appeal from the suppression order does not preclude review of the rescission of the summary suspension because of *res judicata.*

■ In a petition to revoke the summary suspension of a driver's license, the petitioner has the burden of providing a *prima facie* case for the rescission. *People v. Smith,* 172 Ill. 2d 289, 295 (1996). The burden then shifts to the prosecution to come forward with evidence justifying the suspension. *Smith,* 172 Ill. 2d at 295. In the fourth amendment context, a defendant may shift the burden to the prosecution by showing that "he was doing nothing unusual to justify the

intrusion by the police at the time of the stop." *People v. Drewes*, 278 Ill. App. 3d 786, 788 (1996).

■ Because the trial court's determination was based on the review of written documents, and did not involve a determination of the credibility of witnesses, we consider *de novo* all the issues that determine whether defendant has met his burden of proof. See *People v. Hockenberry*, 316 Ill. App. 3d 752, 755-56 (2000). In other words, the question of whether a certain set of facts would provide a basis for a seizure and the question of whether defendant has made a *prima facie* case that no such facts exist are both questions of law, to be reviewed *de novo*.

■ Defendant argues that the summary suspension of his driver's license flowed from an improper seizure; defendant thus has the burden of making a preliminary showing that the Mundelein police had no basis for the seizure. An investigatory seizure is proper under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), when the police officer can point to specific and articulable facts which, taken together with rational inferences derived from those facts, indicate that the person seized is committing, has committed, or is about to commit an offense. *People v. Ertl*, 292 Ill. App. 3d 863, 868 (1997). Probable cause is not required. *People v. Mills*, 115 Ill. App. 3d 809, 814 (1983). An objective standard is applied to determine whether the seizure is reasonable, and a mere suspicion or hunch is insufficient. *People v. Vena*, 122 Ill. App. 3d 154, 160 (1984); *People v. Brodack*, 296 Ill. App. 3d 71, 74 (1998).

■ In this case, the Village relies on the information received from the caller as sufficient grounds for the seizure. Only the facts known to the officer at the time of the seizure can be considered in determining whether the seizure was proper—information gained after the seizure is made must be disregarded. *People v. Yarber*, 279 Ill. App. 3d 519, 524 (1996). We can infer from the structure of the stipulated facts and the circuit court's order that both the parties and the court assumed that a seizure is effected when the police attempt to halt the target vehicle, presumably by activating the police car's emergency lights and/or its siren. This is not the case. In *California v. Hodari D.*, 499 U.S. 621, 626, 113 L. Ed. 2d 690, 697, 111 S. Ct. 1547, 1551 (1991), the Supreme Court explained that for a seizure of a person to occur, there must be *"either* physical force *** or*, where that is absent, *submission* to the assertion of authority." (Emphasis in original.) It is merely *necessary* but not *sufficient* that, taking all circumstances into consideration, a reasonable person in the position at issue would have believed that he was not free to leave. *Hodari D.*, 499 U.S. at 627-28, 113 L. Ed. 2d at 698, 111 S. Ct. at 1551.

This court has applied *Hodari D.* to seizures involving moving vehicles in *Brodack*, 296 Ill. App. 3d at 75, and *People v. Perez*, 249 Ill. App. 3d 912, 916-17 (1993). In *Brodack*, an unidentified caller from a cell phone gave a location, description, and partial license number of a car that was " 'all over the road.' " *Brodack*, 296 Ill. App. 3d at 73. A police officer located the vehicle and activated his car's mars lights, but the vehicle continued on for about 600 feet, entered a left turn lane, made a turn into oncoming traffic, and proceeded 100 feet into a parking lot before finally coming to a stop. *Brodack*, 296 Ill. App. 3d at 73. We held that the seizure occurred when the vehicle actually halted, and therefore it was proper to consider all events prior to that point in determining whether the officer had cause for the seizure. *Brodack*, 296 Ill. App. 3d at 75.

In *Perez*, a sheriff's deputy had a general description and direction of travel of a vehicle believed to have been used by the perpetrators of an armed robbery. She located a vehicle matching the description at a time and place consistent with the available information. She activated her mars lights and floodlight, at which time she observed that a passenger appeared to be trying to conceal something. *Perez*, 249 Ill. App. 3d at 914. We held that the seizure was not effected until the point at which the vehicle began to yield and that, therefore, actions observed between the activation of the lights and that point could be considered in determining whether the deputy had grounds for the seizure. *Perez*, 249 Ill. App. 3d at 917.

We acknowledge that, under the specific facts of the case, *Brodack* is consistent with *Hodari D.* in stating that the vehicle was seized when it came to a halt. However, the formulation in *Perez*, that a seizure is effected only when the vehicle begins to yield, is more generally applicable. *Hodari D.* specifies that, when force is not used, it is the target's submission that marks the point of seizure. *Hodari D.*, 499 U.S. at 626, 113 L. Ed. 2d at 697, 111 S. Ct. at 1550-51. For vehicles moving in traffic, an indication of submission may come well before the vehicle comes to a full halt.

According to the facts recited by defendant, "Officer Lechner *** attempt[ed] to stop the vehicle as the caller provide[d] the dispatcher with his name and address commenting at the same time 'Man, this guy's refusing to stop.' " This phrasing strongly suggests that the caller identified himself after the activation of the emergency lights and before any indication of submission by the van.

The facts as recited by the Village confuse the issue. According to the Village:

> "When the dispatcher advises the caller to confirm that it is a minivan, the caller states, 'Yeah, he's right behind him now. I'm in

a wrecker.' Officer Lechner eventually stops the defendant's mini-van on Route 83 south of Midlothian Road. (The Village would ask the Court to take judicial notice that the distance from Hawley Street and Gilmer Road to Route 83 and Midlothian Road is approximately 3.1 miles.)

At this point, the dispatcher asks the caller for his name and address. While giving his address, the caller states 'Man, this guy's refusing to stop.' "

This *could* be read to state that the dispatcher asks the caller for his name at the point that the van actually halts, and that it is after the van halts that the caller exclaims " 'Man, this guy's refusing to stop.' " We do not need to presuppose the truth of the caller's exclamation to conclude that this sequence of events is utterly implausible. This cannot have been what the Village intended its statement to say. After reviewing the parties' factual assertions, we consider it established that the Mundelein police knew the name and address of the caller before they seized defendant.

█ In this case, defendant argues that the seizure was improper because the caller was unreliable, and we now turn to the question of whether the police had established the reasonable suspicion necessary to seize defendant. An informant's tip to police must bear some indicia of reliability to provide a sufficient basis for a *Terry*-type seizure. See *Alabama v. White*, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 308, 110 S. Ct. 2412, 2415-16 (1990). In older cases, if police received information from the victim of, or a witness to, a crime, the information was viewed as presumptively reliable. *People v. Townsend*, 90 Ill. App. 3d 1089, 1095 (1980); 2 W. LaFave, Search & Seizure § 3.4(a), at 205, 215 (3d ed. 1996). This presumption was particularly strong for witness-informants who identify themselves to the police. 2 W. LaFave, Search & Seizure § 3.4(a), at 205, 215 n.55 (3d ed. 1996); see *People v. Bean*, 84 Ill. 2d 64, 68 (1981); *Townsend*, 90 Ill. App. 3d at 1095. However, all *per se* rules for determining the existence of grounds for an arrest or other seizure were called into doubt by *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). In that case, the Supreme Court criticized the "elaborate set of legal rules" (*Gates*, 462 U.S. at 229, 76 L. Ed. 2d at 542, 103 S. Ct. at 2327) that had been developed by the lower courts to determine the existence of probable cause or reasonable suspicion under older Supreme Court cases such as *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), and instead required that courts consider the totality of the circumstances (*Gates*, 462 U.S. at 230, 76 L. Ed. 2d at 543, 103 S. Ct. at 2328). Nevertheless, *Gates* recognizes that the elements that went into the older analyses, the veracity, reliability, and basis of knowledge of the

informant, continue to be important factors in the totality-of-the-circumstances analysis (*Gates*, 462 U.S. at 230, 76 L. Ed. 2d at 543, 103 S. Ct. at 2328).

*Gates* acknowledges that if a witness has put himself in a position where he would be criminally liable for a false claim if his report proved to be fabricated, little scrutiny of the basis for his knowledge is required. *Gates*, 462 U.S. at 233-34, 76 L. Ed. 2d at 545, 103 S. Ct. at 2330. Post-*Gates* cases acknowledge the significance of the witness having identified himself; in both *Florida v. J.L.*, 529 U.S. 266, 270, 146 L. Ed. 2d 254, 260, 120 S. Ct. 1375, 1378 (2000), and *Alabama v. White*, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 308, 110 S. Ct. 2412, 2415-16 (1990), the Court considered the anonymity of the tipsters involved to be a primary factor in requiring corroboration of the information provided. However, when information comes from a named witness, it remains the case that a minimum of corroboration or other verification of the reliability of the information is required.

Defendant has the burden of presenting a *prima facie* case that the caller was unreliable. Therefore, to make his *prima facie* case, defendant was required to put forward evidence that he submitted to the seizure before the caller gave his name. Although defendant's statement of facts does not positively rule out such a possibility, it strongly suggests the contrary. Further, defendant cannot rely on the Village's statement, because it is simply too unclear to establish anything.

Furthermore, the indicia of reliability are particularly strong. Not only was the informant identified, but there was also significant corroboration of the information that he provided. Because the arresting officer located the van where the caller indicated it would be, we may draw a strong inference that the informant based his knowledge on first-hand observation.

It is instructive to compare these circumstances with those in *White*, an anonymous informant case. In *White*, a police officer received a call from an anonymous person who stated that the defendant would leave a particular apartment at a specified time in a specifically described car. The caller stated that the defendant would be carrying a brown attaché case that would contain approximately one ounce of cocaine and that she would drive to a specific motel. Police observed the defendant exit the building that contained the apartment described and enter a car that matched the described car. She was empty-handed. The police followed her to within a short distance of the motel, at which point a police car halted her. *White*, 496 U.S. at 327, 110 L. Ed. 2d at 306-07, 110 S. Ct. at 2414. Thus, at the time of the seizure, the police had corroborated only details of the tip that might have had an

innocent explanation. The defendant consented to a search of her car. The police found a brown attaché case, which contained marijuana, and a search of the defendant further disclosed three milligrams of cocaine in her purse. *White*, 496 U.S. at 327, 110 L. Ed. 2d at 307, 110 S. Ct. at 2415. The court noted that corroboration of a prediction of future action tends to demonstrate that the informant had "inside information," thus providing some indication of the basis of the informant's knowledge. *White*, 496 U.S. at 332, 110 L. Ed. 2d at 310, 110 S. Ct. at 2417. This was sufficient to make up for the complete absence of information regarding the reliability of the informant himself or herself. See *White*, 496 U.S. at 329, 332, 110 L. Ed. 2d at 308, 310, 110 S. Ct. at 2415-16, 2417.

■ A strong inference that a person is a direct witness to the offense is more indicative of reliability than a weak inference of some source of inside information. Further, an informant who is almost surely a fellow motorist, and thus a chance witness, is much less likely to have a malicious hidden agenda than an informant with a source of inside information. Thus, the Mundelein police clearly had reasonable suspicion that the driver of the van was intoxicated or otherwise impaired when they seized defendant.

We again note that the parties' agreed statement of facts submitted after the notice of appeal conflicts with the evidence presented in the trial court. Because the court did not hear any evidence that the caller was unidentified before defendant submitted to the police, we need not decide whether such anonymity would have rendered the caller unreliable.

■ In summary, we follow *Perez* in holding that no seizure for fourth amendment purposes takes place until a target vehicle begins to yield to police. Defendant has not presented a *prima facie* case that the caller was unidentified at the time of the seizure because he asserts that the caller was unidentified only until police "attempted to stop" his van. Defendant relies on the initial anonymity of the caller to argue that there was no reasonable suspicion for the seizure, but we hold that the caller's subsequent disclosure of his identity and the officer's corroboration of certain aspects of the information justified the seizure. Therefore, defendant has failed to present a *prima facie* case that the seizure was improper.

For the preceding reasons, the Village's appeal of the order of the circuit court of Lake County quashing defendant's arrest and sup-

pressing the resulting evidence is dismissed, and the order rescinding the summary suspension is reversed.

Appeal dismissed in part; judgment reversed in part.

McLAREN and O'MALLEY, JJ., concur.