# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *City of East Peoria v. Palmer*, 2012 IL App (3d) 110904

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF EAST PEORIA, Plaintiff-Appellant, v. BRADFORD PALMER, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-11-0904 |
| Filed | November 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In the prosecution of defendant for driving under the influence, the trial court properly found that the arresting officer lacked a reasonable articulable suspicion of criminal activity warranting the stop of defendant's vehicle, and the issue of whether the officer had probable cause to arrest defendant for DUI was not properly before the appellate court due to the fact that everything that happened after the improper stop was subject to being suppressed; furthermore, the trial court properly refused to admit a recording of a telephone call reporting a possible drunk driver on the ground that the recording was hearsay. |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 11-DT-23; the Hon. Lisa Y. Wilson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Dennis R. Triggs and Katherine L. Swise (argued), both of Miller, Hall & Triggs, LLC, of Peoria, for appellant.

James P. LeFante, of LeFante Law Offices, P.C., and Michael Doubet (argued), both of Peoria, for appellee.

Panel

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices Lytton and Holdridge concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Bradford Palmer, was charged with driving under the influence (DUI) pursuant to section 11-501(a)(2) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(2) (West 2010)). He filed a petition to rescind the statutory summary suspension of his license, which the circuit court granted after finding that the arresting officer lacked a reasonable, articulable suspicion of criminal activity to justify the traffic stop. Shortly thereafter, the defendant filed a motion to quash his arrest. After a hearing, the court granted the motion to quash. On appeal, the municipality of East Peoria argues that: (1) the court erred when it found that the arresting officer lacked a reasonable, articulable suspicion of criminal activity to stop the defendant's vehicle; (2) the arresting officer had probable cause to arrest the defendant for DUI; and (3) the court erred when it refused to admit into evidence an audio recording of a call from Par-A-Dice casino security to the East Peoria police. We affirm.

¶ 2                                    FACTS

¶ 3    On January 16, 2011, at around 11 p.m., East Peoria police officer Jason Ernst pulled over a dark green Ford sport-utility vehicle (SUV) driven by the defendant. Ernst issued a DUI citation to the defendant. In the accompanying paperwork, Ernst wrote the following: "complaint of possible DUI, improper lane usage, improper stopping, strong odor of an alcoholic beverage on breath, slurred speech, swayed while standing still, staggered while walking, slow motor movements, red-glassy eyes, admitted to consuming alcohol." The defendant refused to perform field sobriety tests, and Ernst gave the defendant paperwork on the statutory summary suspension of his driver's license. The Secretary of State later confirmed the summary suspension of the defendant's license.

¶ 4    On February 23, 2011, the defendant filed a petition to rescind the statutory summary suspension of his license. After a hearing on the petition, during which Ernst testified, the circuit court granted the defendant's petition. In so ruling, the court found that "[a] review

of the video and Officer Ernst's testimony demonstrates to the court that there was a lack of reasonable, articulable suspicion to stop the Defendant's vehicle." The State filed a motion to reconsider, which the court later denied via written order. In that order, the court questioned Ernst's credibility.

¶ 5    On April 21, 2011, the defendant filed a motion to quash his arrest, alleging that "the arrest, detention and seizure of the defendant" violated his constitutional rights and requesting the circuit court to dismiss the case.

¶ 6    On October 13, 2011, the circuit court held a hearing on the defendant's motion to quash his arrest. Ernst testified that he was on patrol on January 16, 2011, when the police received a call from the Par-A-Dice casino about a possible drunk driver leaving the premises. The casino gave the police a description of the vehicle and a license plate number. Ernst stated that the dispatcher also told him that the casino had cut off an individual from drinking.

¶ 7    Ernst, who parked in the parking lot of the casino, was waiting for a follow-up call from dispatch because the casino was supposed to call back when the suspect vehicle was going to leave the premises. During this time, Ernst saw a vehicle drive past his location that matched the general physical description of the suspect vehicle. Ernst pulled out and followed the vehicle, although there was a vehicle in between the suspect vehicle and Ernst's vehicle. Ernst could not see any occupants when the suspect vehicle passed.

¶ 8    As Ernst caught up to the vehicle behind the suspect vehicle, Ernst claimed that he observed the suspect vehicle "obstruct traffic as it had stopped partially obstructing the right turn lane and the eastbound [through] lane." Ernst said that the violation occurred within 500 feet after he began following the suspect vehicle, which was the approximate distance from the driveway off which he turned and the stoplight at an intersection.

¶ 9    Ernst stated that he initially cited the defendant for disobeying a traffic control device, but said that he wrote that citation in error as it was the incorrect statute. Ernst testified that "[t]here was also a violation of obstructing traffic, I believe possibly improper lane usage."[1]

¶ 10    When asked more questions regarding the alleged violations, Ernst stated that the suspect vehicle was initially within its lane, but then "partially stopped in the right hand turn lane and the eastbound lane." Ernst admitted that the suspect vehicle was moving slowly at this time. Ernst also stated, "[t]he vehicle was actually obstructing the right turn lane and the straight lane, which basically is obstructing the traffic behind it. If you review the video you can actually see where the vehicle [behind the suspect vehicle] has to stop for the action that the suspect vehicle was committing."

¶ 11    Ernst activated his emergency lights when the suspect vehicle merged into the through lane. The suspect vehicle stopped at the red light. When the light changed, the suspect vehicle continued straight into a gas station parking lot, where Ernst also pulled in and positioned his vehicle so the ensuing encounter would be in view of his vehicle's camera. This was the first point at which Ernst was able to verify that the license plate number of the

---

[1]While there is some indication in the record that Ernst issued a citation sometime later through the mail for obstructing traffic, there are no copies of any citations in the record on appeal other than the DUI citation.

suspect vehicle matched the number given to him by the dispatcher.

¶ 12    Defense counsel asked Ernst whether there were any lane markings in the area. Ernst said yes, but said that they were faded, which he realized after reviewing the videotape of the stop. Ernst admitted that it would be difficult for someone to commit illegal lane usage if the lane markers were not fully developed.

¶ 13    Ernst stated that during the encounter in the gas station parking lot, he observed the defendant as having bloodshot eyes, slurred speech, and a strong odor of alcohol on his breath. The defendant was also allegedly swaying as he stood outside his vehicle. Based on these observations, Ernst suspected the defendant was intoxicated. The defendant refused to perform field sobriety tests, and Ernst arrested the defendant for DUI.

¶ 14    The video recording from Ernst's vehicle was entered into evidence. The video showed Ernst pull out of a parking lot after a dark-colored SUV and another vehicle passed from the left of the screen to the right. The vehicles passed out of sight of the camera, and Ernst turned right out of the parking lot. The road curved around to the right, and those vehicles first came into view as they approached an upcoming red stoplight while driving on the right side of the road near the curb. The in-between vehicle had its brake lights activated, but did not have to stop, while the suspect vehicle moved at a slow rate of speed to the left into a through lane. Ernst activated his lights, merged into the through lane, and pulled up behind the suspect vehicle as it was stopped at the red light.

¶ 15    Ernst identified on the video a right-turn arrow painted on the ground on the right-hand side of the road, but could not point out lane markers between the right-hand side of the road and the through lane. Rather, Ernst stated generally that "the road is lined" and that the lane markers were difficult to see on the video.

¶ 16    When questioned further on the alleged lane violation, Ernst stated that the suspect vehicle was traveling at a rate of speed that was obstructing traffic. Ernst said that the in-between vehicle "had to come to a near stop until [the defendant] exited completely the right turn lane." Ernst admitted that the vehicles were approaching a red light, but stated that he believed the suspect vehicle was traveling too slowly for the distance it was at from the red light.

¶ 17    During cross-examination of Ernst, a recording of the radio transmission between the dispatcher and Ernst was introduced into evidence. On the recording, the dispatcher stated, "possible DUI still sitting in the parking lot at Par-A-Dice," described the vehicle as a "dark Ford SUV," gave the license plate number, and stated that the vehicle was green. She also stated, without specification, "subject was cut off on the boat."

¶ 18    Jared Stevens testified that he was a security officer for Par-A-Dice at the time of the incident. On the night of the incident, he observed a woman, later identified as the defendant's wife, "stumbling up to the second deck bar to order another drink." Believing she was intoxicated, he notified the food and beverage supervisor. They asked the defendant's wife to leave the casino. She said that she needed to get her husband, so they followed her to a blackjack table where the defendant was sitting. The defendant's wife told the defendant that she had been asked to leave. Stevens said that the defendant stumbled as he stood up from the table, had slurred speech, and had "glossed over eyes." Stevens believed

the defendant was also intoxicated and informed the defendant and his wife that if they were going to drive upon leaving the casino, the casino would call the police, which was consistent with casino policy. Stevens did not call the police himself; he notified his security supervisor of the situation, who then called the police.

¶ 19    On cross-examination, Stevens said that he saw the defendant drinking from a bottle of beer as they approached him at the blackjack table. Stevens admitted that the blackjack table was crowded at the time that the defendant "fell back onto his chair in a stumbling manner" as he stood up.

¶ 20    Joshua Ternetti testified that he was the security supervisor at Par-A-Dice at the time of the incident. On the night of the incident, Stevens told him that there were two intoxicated individuals leaving the casino. Ternetti then called the police and relayed that information. Counsel for East Peoria attempted to introduce into evidence the recording of Ternetti's call to the police, but the circuit court rejected the evidence. The court stated that Ternetti had no personal knowledge of the incident–that he was merely relaying Stevens' personal knowledge to the police–and that the evidence was therefore inadmissible hearsay.

¶ 21    The circuit court took the matter under advisement and issued a written ruling on November 2, 2011. In its ruling, the court recounted the facts and found, *inter alia*, that Ernst's credibility was questionable and the informant tip from the casino was not reliable. The court further found that Ernst only had a mere hunch of suspicious activity based on the tip from the casino. Accordingly, the court granted the defendant's motion to quash. East Peoria filed a certificate of substantial impairment to proceed to trial and a notice of appeal from the court's ruling on the motion to quash.

¶ 22                                          ANALYSIS

¶ 23    Initially, we note that the defendant has raised two arguments challenging our jurisdiction to hear this appeal. As we have a continuing duty to assess whether we have jurisdiction to hear an appeal (*Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, ¶ 83), we will address the defendant's arguments.

¶ 24    First, the defendant argues that we lack jurisdiction to hear this appeal because pursuant to section 16-102(c) of the Code (625 ILCS 5/16-102(c) (West 2010)), East Peoria does not have written permission from the current Tazewell County State's Attorney to prosecute alleged violations of the Code. The defendant concedes that East Peoria obtained written permission in 1989 from Tazewell County's former State's Attorney, Erik I. Blanc, but contends that East Peoria needed written permission from Tazewell County's current State's Attorney, Stewart Umholtz, to be able to prosecute this matter.

¶ 25    Section 16-102(c) of the Code provides that "[t]he State's Attorney of the county in which the violation occurs shall prosecute all violations [of the Code] except when the violation occurs within the corporate limits of a municipality, the municipal attorney may prosecute if written permission to do so is obtained from the State's Attorney." 625 ILCS 5/16-102(c) (West 2010).

¶ 26    An examination of the plain language of the statute belies the defendant's construction, especially in light of the Statute on Statutes (5 ILCS 70/0.01 *et seq.* (West 2010)). Section

1.02 of the Statute on Statutes provides that "[w]ords in the present tense include the future." 5 ILCS 70/1.02 (West 2010). Section 1.05 provides that " '[p]erson' or 'persons' as well as all words referring to or importing persons, may extend and be applied to bodies politic and corporate as well as individuals." In light of these provisions, including section 1.01, which provides that "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out" (5 ILCS 70/1.01 (West 2010)), we read the plain language of section 16-102(c) of the Code as requiring permission from the State's Attorney generally, without regard to who held that office when the permission was granted. In this regard, we note a decision from the Second District in which a defendant argued that his convictions were void because the record did not contain proof that the municipality had been delegated prosecutorial authority:

> "Where they have chosen to delegate authority to prosecute Vehicle Code violations to a municipality, it is probable the State's Attorneys of the various counties do so in more than one way. Some may give such permission on a case by case basis; others do so by a general letter of permission to the municipality. (See *City of Decatur v. Curry*, [39 Ill. App. 3d 799, 800, 804 (1976)].) To require, as urged by defendant, that the municipal attorney offer proof in the record of each case that prosecutorial permission has been given by the State's Attorney appears to be an unreasonable and unnecessary burden to impose on the municipal attorneys and State's Attorneys and would also unduly burden the record keeping responsibilities of the circuit clerks. An analogous argument to that offered by defendant might be to require that the record establish that the prosecutor and trial judge hold their respective offices." *People v. Wiatr*, 119 Ill. App. 3d 468, 472-73 (1983).

We also note that the *Wiatr* court held that the defendant's argument was forfeited because, like the defendant in this case, he did not raise it in the circuit court. *Wiatr*, 119 Ill. App. 3d at 473.

¶ 27    We are unpersuaded by the defendant's request to read the term "current" into section 16-102(c). Had the legislature intended permission to be from the current State's Attorney, it would have included the term "current" in the statute. For the aforementioned reasons, we reject the defendant's first jurisdictional argument.

¶ 28    Second, the defendant argues that East Peoria may not use Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006) to bring this appeal because that rule provides for interlocutory appeals by "the State," not municipalities. The defendant's argument is without merit.

¶ 29    In *Village of Mundelein v. Thompson*, 341 Ill. App. 3d 842, 847 (2003), the Second District stated "that when, pursuant to section 16-102 of the [Illinois Vehicle] Code (625 ILCS 5/16-102 (West 2000)), a municipal attorney prosecutes a violation of the Code with written permission of the State's Attorney, the municipal attorney is acting as the State, and an appeal under Rule 604(a) will lie." In this case, the DUI citation issued to the defendant alleged a violation of section 11-501(a)(2) of the Code, not a local ordinance. As we have already held that East Peoria had the proper written permission, we hold that East Peoria is acting as "the State" and may in fact bring this appeal under Rule 604(a)(1). Accord

-6-

*Thompson*, 341 Ill. App. 3d at 847.

¶ 30    Having determined that we have jurisdiction to hear this appeal, we turn to East Peoria's three arguments on appeal: (1) that the court erred when it found that Ernst lacked a reasonable, articulable suspicion of criminal activity to stop the defendant's vehicle; (2) that the arresting officer had probable cause to arrest the defendant for DUI; and (3) that the court erred when it refused to admit into evidence an audio recording of a call from Par-A-Dice casino security to the East Peoria police.

¶ 31    I. WHETHER THE STOP WAS JUSTIFIED BY A REASONABLE,
ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY

¶ 32    First, East Peoria argues that the circuit court erred when it found that Ernst lacked justification to stop the defendant. East Peoria contends that Ernst had "reasonable suspicion" to stop the defendant based on both Ernst's observation of two traffic violations and the tip of a possible DUI. We will address these arguments in turn.

¶ 33    When faced with a challenge to a circuit court's decision on a motion to quash arrest and suppress evidence, we grant great deference to the court's findings of historical fact and will not disturb those findings unless they are against the manifest weight of the evidence. *People v. Mains*, 2012 IL App (2d) 110262, ¶ 12. However, we review the court's ultimate legal ruling under the *de novo* standard. *Mains*, 2012 IL App (2d) 110262, ¶ 12.

¶ 34    Vehicle stops can be supported by probable cause or by the less-exacting standard of reasonable, articulable suspicion. *People v. Hackett*, 2012 IL 111781, ¶ 20. In the latter instance, "[a] police officer may conduct a brief, investigatory stop of a person where the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Hackett*, 2012 IL 111781, ¶ 20. To determine whether the officer's suspicion was reasonable, a court must look to the totality of the circumstances. *People v. DiPace*, 354 Ill. App. 3d 104, 108 (2004). "Only the facts known to the officer at the time of the stop can be considered in determining whether it was proper–information gained after the stop is made must be disregarded." *DiPace*, 354 Ill. App. 3d at 108.

¶ 35    A. Whether the Stop Was Justified Based on Alleged Traffic Violations

¶ 36    In this case, Ernst alleged that he observed the defendant's vehicle: (1) obstruct traffic in violation of section 11-1416 of the Code (625 ILCS 5/11-1416 (West 2010)); and (2) commit improper lane usage in violation of section 11-709 of the Code (625 ILCS 5/11-709 (West 2010)).

¶ 37    After reviewing all of the evidence, including the video, the circuit court did not believe that Ernst observed any traffic violations. Most importantly, the court found that Ernst was not credible. A review of the record reveals no error in the court's credibility determination. See generally *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 31 (noting that determinations of witness credibility are within the province of the trier of fact, not a reviewing court). Ernst testified that he initially cited the defendant for disobeying a traffic control device but

-7-

claimed that he wrote the citation under the incorrect statute. He apparently later issued a citation for obstructing traffic.

¶ 38        In relevant part, section 11-1416 of the Code provides that "[n]o person shall wilfully and unnecessarily hinder, obstruct or delay, or wilfully and unnecessarily attempt to delay, hinder or obstruct any other person in lawfully driving or traveling along or upon any highway within this State." 625 ILCS 5/11-1416 (West 2010). When questioned about this alleged violation, Ernst was evasive at times. He did claim that the defendant's vehicle "partially stopped" within two lanes, which caused the in-between vehicle to come to a stop before being able to proceed toward its right-hand turn, but he also admitted that the vehicles were approaching a controlled intersection and that the light was red. He also admitted that the defendant's vehicle was still moving. A review of the video reveals the defendant's vehicle was in fact moving, albeit slowly, and the in-between vehicle braked to slow down but did not come to a stop. While the defendant's vehicle could be said to have hesitated in moving to the left, we agree with the circuit court that East Peoria did not present credible evidence giving rise to a reasonable, articulable suspicion that the defendant violated section 11-1416.

¶ 39        The same can be said for Ernst's alleged observation of improper lane usage. In relevant part, section 11-709 of the Code provides that "[w]henever any roadway has been divided into 2 or more clearly marked lanes for traffic *** (a) [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 5/11-709(a) (West 2010). East Peoria did not present any credible evidence that there were clear lane markings where the defendant's vehicle allegedly merged into a through lane. See generally *Hackett*, 2012 IL 111781, ¶¶ 27-28 (holding that an officer can effect an investigatory stop under section 11-709(a) if the officer observes a vehicle deviate from its established lane). Ernst generally stated that the road was lined, but he could not point out lane markings in the video. He stated that the lane markings were difficult to see in the video, and he admitted that it would be difficult for a driver to commit improper lane usage if the lane markings were not clearly marked. Additionally, the video does not provide conclusive proof that the defendant's vehicle was occupying two lanes, even if the lane markings were clear as required by section 11-709. While the defendant's vehicle could have possibly executed a smoother move into the through lane, the vehicle did in fact move to the left in order to go straight at the intersection, rather than right. Further, there is some indication in Ernst's testimony that he did not "observe" either alleged violation until after the fact when he reviewed the video from his vehicle's camera. For the foregoing reasons, under these circumstances, we hold that the traffic stop was not justified by a reasonable, articulable suspicion under either section 11-709 or section 11-1416.

¶ 40                    B. Whether Ernst Had a Reasonable, Articulable Suspicion
                              Based on the Tip From the Casino

¶ 41        East Peoria also alleges that Ernst had a reasonable, articulable suspicion of criminal activity based on the tip from the casino. East Peoria contends that the tip was sufficiently reliable to provide Ernst with justification to stop the defendant's vehicle.

¶ 42	An informant's tip can serve as the basis for a lawful *Terry* stop if the tip bears some indicia of reliability. *Village of Mundelein v. Minx*, 352 Ill. App. 3d 216, 220 (2004); *DiPace*, 354 Ill. App. 3d at 108; *People v. Allen*, 409 Ill. App. 3d 1058, 1071 (2011) (noting that a court should consider the tipster's veracity, reliability, and basis of knowledge). The inquiry into whether an informant's tip is reliable cannot be reduced to a bright-line test and requires a careful consideration of the specific circumstances of each particular case. See *Allen*, 409 Ill. App. 3d at 1071-72 (discussing the contextual nature of the reliability determination). Factors that can be relevant to the analysis include: (1) whether the tip came from an eyewitness or victim of a crime, which can tend toward being more reliable (*Allen*, 409 Ill. App. 3d at 1071); (2) whether the tipster identified himself or herself to the police, as opposed to the generally less reliable tips from anonymous individuals (*DiPace*, 354 Ill. App. 3d at 108; see also *People v. Shafer*, 372 Ill. App. 3d 1044, 1050-52 (2007) (discussing tips made to emergency numbers and anonymity)); and (3) whether the tip contained "predictive information and readily observable details" that the police confirmed or corroborated (*Allen*, 409 Ill. App. 3d at 1072).

¶ 43	Our review of the totality of the circumstances in this case reveals that the tip from the casino was insufficient to justify the stop of the defendant's vehicle. It is true that the tip was from an identified caller and that some testimony was elicited to suggest that the casino would customarily call the East Peoria police in these types of circumstances. Nevertheless, it is important to note what Ernst knew at the time he decided to act: (1) the casino had called in a possible DUI; (2) an individual had been cut off from drinking by the casino; (3) the suspect vehicle was a dark green Ford SUV; (4) the vehicle was still in the casino parking lot; and (5) the casino would call back when the vehicle left the parking lot. Before getting that follow-up call, Ernst observed a dark-colored SUV drive past his location, which he decided to follow. Despite East Peoria's representations during oral argument that Ernst saw the SUV leave the casino's parking lot, there is no such evidence in the record. At the hearing, Ernst in fact testified that he saw the vehicle drive past his location, not that he saw it leave the parking lot. Further, a review of the video shows the SUV drive past the parking lot; it does not show the SUV leave the parking lot.

¶ 44	We recognize the significant body of case law that provides for a less stringent reliability analysis when the tip informs the police of a suspected drunk driver. See, *e.g.*, *Shafer*, 372 Ill. App. 3d at 1052-53 (discussing and agreeing with cases in which less rigorous corroboration was required for tips involving suspected drunk drivers). Nevertheless, the fact remains in this case that Ernst began following a vehicle based solely on the fact that it was a dark-colored SUV and without having received a follow-up call that the suspect vehicle had left the lot. He activated his lights after allegedly observing a traffic violation, but, as we held above, East Peoria presented no credible evidence that any traffic violations occurred. Moreover, Ernst was not able to verify whether the vehicle's license plate number matched the tip's description until after the vehicles stopped in the gas station parking lot. Under these circumstances, we hold that the tip from the casino was insufficient to justify the stop of the defendant's vehicle.

¶ 45	Accordingly, for the aforementioned reasons, we hold that the circuit court did not err when it found that the traffic stop of the defendant's vehicle was improper.

¶ 46                    II. WHETHER ERNST HAD PROBABLE CAUSE
                        TO ARREST THE DEFENDANT FOR DUI

¶ 47       East Peoria's second argument on appeal is that Ernst had probable cause to arrest the
defendant for DUI. This argument is irrelevant for two reasons. First, we have already held
that the stop was improper, so what transpired during the stop is suppressed. Second, as
noted by the defendant, the circuit court never addressed this issue. Accordingly, this issue
is not properly before this court and we will not address the merits of East Peoria's argument.
See *Lurgio v. Commonwealth Edison Co.*, 394 Ill. App. 3d 957, 968 (2009).

¶ 48        III. WHETHER THE AUDIO RECORDING OF THE CASINO'S CALL
         TO THE POLICE SHOULD HAVE BEEN ADMITTED INTO EVIDENCE

¶ 49       East Peoria's third argument on appeal is that the circuit court erred when it refused to
admit into evidence the audio recording of the call from Par-A-Dice casino security to the
police. Specifically, East Peoria claims that the recording of the call from Ternetti to the
police was not inadmissible hearsay because it was offered not for the truth of the matter
asserted but, rather, "for the purpose of showing its effect on the listener and the course of
the subsequent police investigation."

¶ 50       Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.
*People v. Cloutier*, 178 Ill. 2d 141, 154 (1997). However, if the out-of-court statement is
being offered for a different purpose, the statement is not hearsay. *People v. Williams*, 181
Ill. 2d 297, 313 (1998). "For example, a hearsay statement is allowed where it is offered for
the limited purpose of showing the course of a police investigation where such testimony is
necessary to fully explain the State's case to the trier of fact [citation] or to establish the
intent or state of mind of the declarant [citation]." *Williams*, 181 Ill. 2d at 313; see also
*People v. Gonzalez*, 379 Ill. App. 3d 941, 954 (2008) ("an out-of-court statement offered to
prove its effect on a listener's mind or to show why the listener subsequently acted as he did
is not hearsay and is admissible"). A court's initial determination of whether a particular
statement constitutes hearsay is a legal determination that we review *de novo* on appeal.
*People v. Aguilar*, 265 Ill. App. 3d 105, 109 (1994).

¶ 51       In this case, in ruling on the recording's admissibility, the circuit court stated that Ternetti
did not personally observe the defendant and his wife and that Ternetti was merely relaying
information given to him by Stevens. As the court noted, through Stevens, East Peoria had
already established that Stevens believed the defendant and his wife were intoxicated and
that the police would be contacted. East Peoria had also already established what the police
did with that information. Thus, the only non-cumulative, probative value of the recording
would have been for the truth of the matter asserted–*i.e.*, that the two individuals getting
ready to leave the casino were intoxicated. Accordingly, we hold that the circuit court did not
err when it ruled that the recording was inadmissible hearsay. See *Williams*, 181 Ill. 2d at 313
("[t]he determination of whether a statement constitutes inadmissible hearsay does not focus
upon the substance of the statement, but rather the purpose for which the statement is being
used").

¶ 52                                    CONCLUSION

¶ 53          The judgment of the circuit court of Tazewell County is affirmed.

¶ 54          Affirmed.