815 N.E.2d 965 (2004)
352 Ill. App.3d 216
287 Ill.Dec. 321
The VILLAGE OF MUNDELEIN, Plaintiff-Appellant,
v.
Patrick MINX, Defendant-Appellee.
No. 2-03-0387.
Appellate Court of Illinois, Second District.
September 7, 2004.
*967 Lawrence R. LaLuzerne, Smith & LaLuzerne, Waukegan, for Village of Mundelein.
Alfred L. Knorr, Glenview, for Patrick Minx.
Justice McLAREN delivered the opinion of the court:
Defendant, Patrick Minx, was arrested for driving under the influence of alcohol (DUI) and his driving privileges were summarily suspended (cf. 625 ILCS 5/11-501.1 (West 2002)). Defendant petitioned to rescind the summary suspension and moved to quash his arrest and suppress evidence, arguing that he was stopped in violation of the fourth amendment (U.S. Const., amend.IV). The trial court granted the petition and the motion, and the Village of Mundelein (the Village) timely appealed. We affirm in part and dismiss in part.
First we must consider the scope of our jurisdiction. We have an independent duty to insure that jurisdiction is proper in both civil and criminal cases (People v. O'Connor, 313 Ill.App.3d 134, 135, 245 Ill.Dec. 818, 728 N.E.2d 1175 (2000)), and thus we address the issue of jurisdiction regardless of whether the parties raise it. In this case, the Village contends that we have jurisdiction over the appeal of the rescission of the summary suspension pursuant to Supreme Court Rule 303 (155 Ill.2d R. 303) and the suppression order pursuant to Supreme Court Rule 604(a) (188 Ill.2d R. 604(a)).
*968 Supreme Court Rule 604(a)(1) provides:
"In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114-1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence." (Emphasis added.) 188 Ill.2d R. 604(a)(1).
It is well settled that Rule 604(a)(1) applies only to the State and not to municipalities. Village of Cary v. Pavis, 171 Ill.App.3d 1072, 122 Ill.Dec. 264, 526 N.E.2d 523 (1988). In this case, there is no doubt that the Village intended to prosecute under its local ordinance and not the corresponding section of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(2) (West 2002)). The Village conceded this issue during oral argument before this court. Further, the citation issued to defendant supports the Village's concession. On the citation issued to defendant, the form has check boxes indicating various sections of the Code. Under this are two more check boxes, "ILCS" and "local ordinance." Next to the "local ordinance" box is a space for the local ordinance citation. The "local ordinance" box is checked, but there is no citation to any ordinance. The "ILCS" box is not checked. Because the Village's concession, along with the citation issued to defendant, shows an intent to prosecute under the municipal ordinance, we lack jurisdiction to consider the suppression order relating to the DUI. See Village of Mundelein v. Thompson, 341 Ill.App.3d 842, 847, 276 Ill.Dec. 237, 793 N.E.2d 996 (2003).
The Village urges this court to overturn our decision in Village of Cary, 171 Ill.App.3d 1072, 122 Ill.Dec. 264, 526 N.E.2d 523, and hold that "a municipality can appeal the trial court's order granting a motion to quash arrest and suppress evidence under Supreme Court Rule 604(a) when the underlying charge is written exclusively as a municipal violation." We decline. Only the supreme court can make rules governing interlocutory appeals, and we are constrained to follow these rules and the long string of cases interpreting Rule 604(a) as applying only to State and not municipal appeals. See Village of Maywood v. Houston, 10 Ill.2d 117, 139 N.E.2d 233 (1956); Village of Park Forest v. Bragg, 38 Ill.2d 225, 230 N.E.2d 868 (1967); Village of Mundelein v. Aaron, 112 Ill.App.3d 134, 67 Ill.Dec. 765, 445 N.E.2d 57 (1983).
The Village also argues that this court has jurisdiction over the trial court's order regarding the municipal DUI prosecution because the Village has written permission from the State's Attorney to prosecute State Code violations. However, in this case, the Village was not prosecuting a State Code violation. Rather, the record and arguments reveal that the Village was prosecuting a violation of its own municipal ordinance mimicking the State Code. Thus, Village of Cary controls as to the appeal of the suppression order, and this court lacks jurisdiction over the appeal of that order. Therefore, we address only the trial court's order rescinding the summary suspension.
According to the record, an individual contacted the Mundelein police department on December 30, 2002, and said that defendant's car, a Mercury Marquis with registration number 3836, was "driving recklessly." The caller, who was driving behind defendant's car, was willing to sign a complaint. Officer Thomas Perdue was given this information and dispatched to the scene. He positioned his vehicle between *969 the two cars and followed defendant, but he did not notice any erratic driving. Although Officer Perdue drove past the informant's car, he did not know the informant's identity, did not speak to him, and did not know what he looked like. Defendant turned into his driveway, parked, and began exiting his car. Officer Perdue pulled up behind defendant. He activated his emergency lights either at this moment or shortly before reaching the driveway. Defendant did not notice the police car until he had gotten out of his vehicle. At this point, he did not feel free to leave.
About two minutes after Officer Perdue stopped, another police car arrived at the scene. According to Officer Perdue, defendant failed all the field sobriety tests, smelled strongly of alcohol, and had bloodshot, glassy eyes. He refused to submit to a chemical test. Officer Perdue arrested defendant for DUI, and defendant's driving privileges were summarily suspended. Defendant petitioned to rescind the summary suspension and moved to quash his arrest and suppress evidence, challenging the propriety of the underlying stop. The trial court granted defendant's petition and motion. The Village appeals, arguing that (1) defendant was not seized because he stopped his vehicle before Officer Perdue exercised any show of authority and, alternatively, (2) the informant's tip gave Officer Perdue a lawful basis to conduct an investigatory stop.
Generally, a ruling on a petition to rescind a summary suspension will not be reversed unless it is manifestly erroneous. People v. Rush, 319 Ill.App.3d 34, 38, 253 Ill.Dec. 383, 745 N.E.2d 157 (2001). However, where, as in this case, the relevant facts are undisputed, review of the ruling on the petition is de novo. People v. Granados, 332 Ill.App.3d 860, 862-63, 266 Ill.Dec. 202, 773 N.E.2d 1272 (2002).
The Village first argues that defendant was not seized. A particular encounter constitutes a seizure for fourth amendment purposes when, considering all the surrounding circumstances, the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise end the encounter. People v. Brodack, 296 Ill.App.3d 71, 75, 230 Ill.Dec. 540, 693 N.E.2d 1291 (1998). Additionally, either the police must use physical force or the defendant must submit to the assertion of police authority. Village of Mundelein v. Thompson, 341 Ill.App.3d 842, 848-49, 276 Ill.Dec. 237, 793 N.E.2d 996 (2003).
The Village cites People v. Scott, 249 Ill.App.3d 597, 189 Ill.Dec. 108, 619 N.E.2d 809 (1993). There, an anonymous citizen approached two police officers and said that an apparently intoxicated individual had just driven away in a brown pickup truck. One officer drove in the direction indicated by the citizen and saw a brown pickup truck. He did not see the driver, the defendant, commit any traffic violations. The defendant pulled into a private driveway, and the officer pulled up behind him. The defendant exited the truck and staggered toward the squad car. The defendant swayed while he was standing, his breath smelled of alcohol, and he had slurred speech and bloodshot eyes. The officer arrested him for DUI and driving while his license was revoked. Scott, 249 Ill.App.3d at 599, 189 Ill.Dec. 108, 619 N.E.2d 809. The trial court granted the defendant's petition to rescind the summary suspension of his driver's license and his motion to quash his arrest, ruling that the defendant was improperly seized. This court reversed and remanded the cause, holding that the defendant had not been seized. We stated, "[t]he record is silent regarding any show of force or authority or any indication that the officer *970 requested defendant to stop. * * * The evidence supports the inference that defendant voluntarily stopped his truck, exited and approached the officer." Scott, 249 Ill.App.3d at 603-04, 189 Ill.Dec. 108, 619 N.E.2d 809.
We agree that Scott is very similar to the case at bar. However, as the trial court observed, the key difference here is that Officer Perdue asserted authority by activating his emergency lights. See City of Highland Park v. Lee, 291 Ill.App.3d 48, 54, 225 Ill.Dec. 459, 683 N.E.2d 962 (1997) (use of emergency lights constitutes a show of authority). The Village argues that this distinction is irrelevant because defendant had already stopped and exited his car before noticing the emergency lights. Still, when he noticed the emergency lights, he submitted to them and did not leave; a reasonable person in those circumstances would not have felt free to ignore the officer and enter the house or walk away.
The Village next argues that even if defendant was seized, the informant's tip justified the seizure. Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an investigatory seizure is proper if the officer can point to specific, articulable facts that, when combined with rational inferences derived from them, provide reasonable suspicion that the person seized has committed or is about to commit a crime. Thompson, 341 Ill.App.3d at 848, 276 Ill.Dec. 237, 793 N.E.2d 996; see 725 ILCS 5/107-14 (West 2002) (codifying Terry standard). The facts supporting the police officer's suspicion do not need to constitute probable cause, but the officer's actions must be based on more than a mere hunch. People v. Brown, 343 Ill.App.3d 617, 622, 278 Ill.Dec. 416, 798 N.E.2d 800 (2003). In evaluating whether this standard has been met, we use a totality-of-the-circumstances approach to achieve a fair balance between the legitimate aims of law enforcement and the rights of citizens to be free from unreasonable government intrusion. People v. Ledesma, 206 Ill.2d 571, 582, 276 Ill.Dec. 900, 795 N.E.2d 253 (2003).
An informant's tip may provide a basis for a lawful Terry stop, but the information must have some indicia of reliability. Thompson, 341 Ill.App.3d at 850, 276 Ill.Dec. 237, 793 N.E.2d 996. In the past, the reliability of the "citizen-informant" was judged by a standard different from that of the typical criminal informant or an anonymous informer. The citizen-informant was afforded a presumption of reliability. This rule is sometimes referred to as the citizen-informant doctrine. However, our supreme court abolished this bright-line test and replaced it with the totality-of-the-circumstances analysis. People v. Adams, 131 Ill.2d 387, 137 Ill.Dec. 616, 546 N.E.2d 561 (1989). The supreme court stated, "[T]he rigidity embodied in the presumptions concerning the classifications is no longer applicable." Adams, 131 Ill.2d at 398, 137 Ill.Dec. 616, 546 N.E.2d 561. Later, this court recognized the abolition of the citizen-informant doctrine in People v. Ertl, 292 Ill.App.3d 863, 226 Ill.Dec. 955, 686 N.E.2d 738 (1997), when we wrote: "In establishing the reliability of the information source, the importance of the traditional classifications is now less significant than it once was." Ertl, 292 Ill.App.3d at 869, 226 Ill.Dec. 955, 686 N.E.2d 738. We note that the majority rejected Justice Doyle's position in his special concurrence that the citizen-informant doctrine is viable in Illinois. Ertl, 292 Ill.App.3d at 875-78, 226 Ill.Dec. 955, 686 N.E.2d 738 (Doyle, J., specially concurring).
While the citizen-informant is no longer afforded a presumption of reliability, the citizen-informant has a greater indicia of *971 reliability than the typical criminal informant. Thompson, 341 Ill.App.3d at 851, 276 Ill.Dec. 237, 793 N.E.2d 996. Our supreme court abolished the bright-line classifications because there are many factors that must be considered when determining reliability. Ertl, 292 Ill.App.3d at 870, 226 Ill.Dec. 955, 686 N.E.2d 738. A limited list of factors that add to the indicia of reliability includes whether the citizen-informant identified himself, offered to sign a complaint, and witnessed the alleged offense, or whether the information was independently corroborated. Others factors weigh against reliability, such as whether the informant was paid for the information, did not witness the alleged offense, or failed to identify himself. See Thompson, 341 Ill.App.3d at 850-51, 276 Ill.Dec. 237, 793 N.E.2d 996; Ertl, 292 Ill.App.3d at 863, 869-70, 226 Ill.Dec. 955, 686 N.E.2d 738.
The citizen-informant in this case had an indicia of reliability even though the citizen-informant was not identified by name. The indicia of reliability exist because the citizen-informant witnessed a crime by happenstance, reported the crime, did nothing to conceal his identity and, in fact, indicated that he would sign a complaint, and followed defendant's vehicle until the officer arrived, thereby exposing his identity. In light of these facts, the citizen-informant report had the indicia of reliability. But that is not the end of our inquiry regarding probable cause.
In addition to the informant's reliability, we must consider the level of detail he provides. See City of Lake Forest v. Dugan, 206 Ill.App.3d 552, 555-56, 151 Ill.Dec. 474, 564 N.E.2d 929 (1990). Relevant to our inquiry is Village of Gurnee v. Gross, 174 Ill.App.3d 66, 123 Ill.Dec. 866, 528 N.E.2d 411 (1988), which, like this case, involved a complaint of reckless driving. There, a police officer was dispatched to investigate an anonymous complaint that a blue Camaro with license number BMG697 was driving recklessly. The officer located a vehicle matching this description, turned on his emergency lights, and asked the Camaro's driver, the defendant, to pull over. The defendant looked at the officer but then drove through the intersection. The defendant eventually pulled over and was arrested for DUI. The trial court granted the defendant's motion to quash his arrest and suppress evidence, holding that no evidence had been presented regarding the basis of the reckless driving complaint or the identity or reliability of the complainant. Gross, 174 Ill.App.3d at 67-68, 123 Ill.Dec. 866, 528 N.E.2d 411. On appeal, we agreed that the reckless driving complaint, along with the police officer's encounter of the described vehicle in the reported area, did not justify an investigatory stop. However, we held that the stop was proper because the complaint was coupled with the defendant's failure to pull over at the officer's initial request. Gross, 174 Ill.App.3d at 69-70, 123 Ill.Dec. 866, 528 N.E.2d 411.
Here, as in Gross, the caller simply reported that defendant was "driving recklessly," without indicating what observations led him to this conclusion, e.g., whether defendant was speeding, running red lights, weaving between lanes, etc. This information did not provide the specificity necessary to justify an investigatory stop. See Dugan, 206 Ill.App.3d at 555-56, 151 Ill.Dec. 474, 564 N.E.2d 929 (anonymous informant's complaint, that driver was intoxicated, did not justify investigatory stop because caller did not mention specific facts that led to his conclusion and officer did not observe any behavior that corroborated claim).
After considering the totality of the circumstances in this case, we conclude that, although the citizen-informant had an *972 indicia of reliability, because of the lack of detail provided, Officer Perdue lacked reasonable suspicion at the time he instituted the investigatory stop. While the motorist-informant here had a greater degree of reliability than the completely anonymous informant in Gross, the additional reliability did not adequately compensate for either the lack of detail in his complaint or the absence of a police officer's observation of corroborating behavior. As stated in Ertl, 292 Ill.App.3d at 875, 226 Ill.Dec. 955, 686 N.E.2d 738, "the forcible stop of a citizen cannot be legitimized by the simple expedient of one officer passing on a telephone informant's tip lacking the requisite degree of reliability, quality, factual sufficiency, and corroboration." Such is the case here, as the totality of information was simply insufficient to give Officer Perdue reasonable suspicion that defendant was guilty of a crime.
Based on our conclusion that Officer Perdue was not justified in conducting an investigatory stop, we affirm the order rescinding the summary suspension. We dismiss the Village's appeal of the order of the circuit court of Lake County quashing defendant's arrest and suppressing the resulting evidence.
Affirmed in part and dismissed in part.
GROMETER and KAPALA, JJ., concur.