THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORENZO DiPACE, Defendant-Appellant.

Second District    No. 2—03—0469

Opinion filed September 30, 2004.—Modified on denial of rehearing November 10, 2004.

Michael J. Pelletier and Geoffrey J. Heeren, both of State Appellate Defender's Office, of Chicago, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Paul Benjamin Linton, of Northbrook, for the People.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Lorenzo DiPace, appeals from his convictions of Class 2 felony driving under the influence of alcohol (625 ILCS 5/11—501(c—1)(3) (West 2002)), and Class 4 felony driving while license revoked (625 ILCS 5/6—303(d) (West 2002)). Defendant contends that (1) the trial court erred in denying his motion to suppress because the police lacked reasonable suspicion to stop his vehicle; (2) his breath alcohol analysis should not have been admitted by the trial court; (3) the State failed to prove his prior violations of the statutes as elements of both crimes; and (4) he cannot be convicted of both Class 2 felony driving under the influence and Class 4 felony driving while license revoked, because the crimes should be merged. We affirm.

## I. Facts

On February 14, 2002, two women were driving north on Interstate 355 when they noticed a red Mercury Mountaineer being driven erratically in front of them. After watching the car drift out of its lane and then jerk back into its lane several times, they called the police. They provided the dispatcher with a description of the car and its license plate number. They followed the Mountaineer as it exited onto Lake Street, where they watched it drift onto the shoulder, make contact with a raised curb, and also almost make contact with another car before finally pulling into a grocery store parking lot. While the two women waited in the parking lot for police to arrive, defendant exited the Mountaineer and went into the grocery store.

Defendant was still inside the grocery store when Officer Michael Gicla arrived on the scene. The two women relayed to Gicla what they had seen. They pointed out defendant's car, which was parked in a relatively isolated area in the parking lot, and they described the driver as a white male, possibly in his forties. After providing Gicla with their names, birth dates, and phone numbers, the two women departed. One of the women later testified at trial.

From his police car, Gicla watched the Mountaineer until he saw defendant return to his car and drive out of the parking lot. He followed defendant for approximately one mile before he saw defendant's car cross onto the dotted white lane-dividing lines. Gicla then activated his police lights to pull over defendant's car. Defendant slowed and continued driving for approximately one-half mile, passing a few minor streets, before pulling over at the next major intersection.

When Gicla approached defendant's car, he noted a strong odor of alcohol on defendant's breath. Gicla also noted that defendant's speech was noticeably slurred. Defendant claimed that he had consumed 1½

beers. Gicla asked defendant to provide a driver's license, which defendant was unable to do. Gicla then asked defendant to exit the car so that Gicla could administer some field sobriety tests. As the two walked to the front of defendant's vehicle to perform the tests, Gicla noted that defendant had unsteady balance and was stutter-stepping and swaying as he walked. Gicla asked defendant to walk nine steps in a straight line, heel to toe, then turn and walk nine steps back to his starting point. Defendant attempted to comply, but he could not muster the balance to complete the test. He almost fell over trying to turn around after only seven steps. At that point, defendant informed Gicla that back and leg injuries would prevent him from completing the test.

Gicla asked him to perform a finger dexterity test, whereby defendant was required to touch his thumb to his other fingers and simultaneously count to four, and then go back through the same sequence in reverse. Defendant was unable to complete the task as instructed. Gicla then asked defendant to recite part of the alphabet, which defendant also was unable to do correctly. Gicla then arrested defendant and took him to the police station.

At the police station, Gicla continued to observe defendant before a breath alcohol analysis test was administered. The breath analysis showed that defendant had a blood-alcohol level of 0.246. The breath analysis machine had been certified as operational on February 12, 2002, and it gave a reading of 0.000 for blank air just before defendant's reading. The machine was certified again on March 15, 2002, the same day that it was replaced because of "frequent false mouth alcohol display," which meant that the machine's mouth alcohol detector was incorrectly detecting the presence of alcohol in the mouth of a test subject and aborting the breath test.

After a bench trial, defendant was found guilty of Class 2 felony driving under the influence and Class 4 felony driving with a revoked license. He timely appeals. Pursuant to the discussion below, we affirm the judgment of the trial court.

## II. Discussion

As a threshold matter, the State argues that defendant's issues on appeal are waived because defendant did not file a posttrial motion preserving those issues. Although a written posttrial motion is generally required to preserve an issue for appeal (*People v. Enoch*, 122 Ill. 2d 176, 185-87 (1988)), a posttrial motion is not necessary to preserve questions in a bench trial if the issues were presented to the trial court (*People v. Crowder*, 174 Ill. App. 3d 939, 941 (1988)). Therefore, defendant has not waived his arguments in this case, and we must address the merits of his appeal.

Defendant's first argument on appeal is that the State lacked adequate grounds to stop his vehicle and thus that the trial court erred in denying his motion to suppress evidence discovered pursuant to that stop. The fourth amendment to the United States Constitution protects individuals from unreasonable searches and seizures of their persons and property. U.S. Const., amend. IV. Although a warrant supported by probable cause is generally required for a search or seizure to be considered reasonable under the fourth amendment, under *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968), an officer may make a valid investigatory stop without probable cause when the officer reasonably infers from all the facts and circumstances that a person is committing, has committed, or is about to commit a crime. *People v. Welling*, 324 Ill. App. 3d 594, 599-600 (2001). In order to stop a vehicle, an officer must have a reasonable suspicion that the vehicle or an occupant is subject to seizure for a violation of law. *People v. Greco*, 336 Ill. App. 3d 253, 257 (2003). Such reasonable suspicion must be based on specific, articulable facts; a mere hunch is insufficient. *Greco*, 336 Ill. App. 3d at 257; *Welling*, 324 Ill. App. 3d at 600. A court will use a totality-of-the-circumstances approach in determining whether an officer's suspicion was reasonable. *People v. Ertl*, 292 Ill. App. 3d 863, 870 (1997). Only the facts known to the officer at the time of the stop can be considered in determining whether it was proper—information gained after the stop is made must be disregarded. *Village of Mundelein v. Thompson*, 341 Ill. App. 3d 842, 848 (2003). We review *de novo* the trial court's legal determination of defendant's motion to suppress. *Welling*, 324 Ill. App. 3d at 599.

While reasonable cause to stop an individual may be based on an informant's tip, some indicia of the tip's reliability must be provided to justify the stop. *Adams v. Williams*, 407 U.S. 143, 145-48, 32 L. Ed. 2d 612, 616-18, 92 S. Ct 1921, 1922-24 (1972); *Village of Gurnee v. Gross*, 174 Ill. App. 3d 66, 69-70 (1988). Corroboration of details of the informant's tip supports the veracity and reliability of that tip. See *People v. Smith*, 258 Ill. App. 3d 1003, 1017 (1994) (stating the rule in the context of finding probable cause); see also *Ertl*, 292 Ill. App. 3d at 869 (stating that the reliability determinations for probable cause and reasonable suspicion are analogous, with an allowance given for the lower standard of reasonable suspicion). Tips from known informants are more reliable than those from anonymous informants, because a known informant's veracity, reputation, and basis of knowledge may be assessed by the investigating officer. See *Florida v. J.L.*, 529 U.S. 266, 269, 146 L. Ed. 2d 254, 259, 120 S. Ct. 1375, 1378 (2000). The fact that the information supporting the officer's reasonable suspicion

came from the victim or an eyewitness does not make the tip presumptively reliable, but it is entitled to particularly great weight in evaluating the informant's reliability. *People v. Aguilar*, 286 Ill. App. 3d 493, 496-97 (1997); *Ertl*, 292 Ill. App. 3d at 870. When a tip comes from an identifiable witness, only a minimum of corroboration or other verification of the reliability of the information is required, because the witness puts himself or herself in position to be criminally liable for a false complaint. *Thompson*, 341 Ill. App. 3d at 851.

■ In this case, the police had reasonable suspicion to support the stop of defendant's vehicle. The police obtained a tip from two eyewitnesses who observed and described defendant's erratic driving. The eyewitnesses gave a description of defendant's car and its location, and a specific description of the erratic driving they had witnessed. They provided the car's license number. They also provided their names and contact information. Defendant's car, which the witnesses pointed out to the police, met their description and bore the license number the witnesses had provided the police dispatcher. Given this corroboration of the witnesses' information, along with the fact that the tip was from identified citizen eyewitnesses who had provided a detailed tip to police in person, the information the police used in forming a reasonable suspicion was extremely reliable.[1]

A brief survey of relevant case law reveals that courts have found reasonable suspicion to support vehicle stops based on less compelling facts than we see here. For example, in *Thompson*, 341 Ill. App. 3d at 845, 850-52, an informant called police to report a driver in front of him who appeared to be drunk. The caller described the van in front of him and also gave its license number and location. *Thompson*, 341 Ill. App. 3d at 845. The dispatcher did not obtain the caller's name until after police attempted to pull over the van. *Thompson*, 341 Ill. App. 3d at 845. The court found that there was reasonable suspicion because the caller was identified and was a fellow motorist and a witness. Here, the tipsters gave their identities and personally reported specific information to the police before the police attempted to stop defendant.

Likewise, in *Adams*, 407 U.S. at 145-48, 32 L. Ed. 2d at 616-18, 92 S. Ct at 1922-24, the Supreme Court found that a tip was reliable where it was personally given to police by an informant. Though the

---

[1]We note that, because a seizure does not begin until a vehicle begins to yield to a police officer (*Thompson*, 341 Ill. App. 3d at 848-49), defendant's failure to pull over immediately in response to police may be used to support reasonable suspicion (see *Gross*, 174 Ill. App. 3d at 68). However, we do not rest our decision on that issue in this case.

police officer in *Adams* had no indication of where his informant obtained his knowledge, the Supreme Court gave great weight to the fact that the informant personally reported his tip. *Adams*, 407 U.S. at 147-48, 32 L. Ed. 2d at 617-18, 92 S. Ct. at 1923-24. The Court stated, "[t]he informant here came forward personally to give information that was immediately verifiable at the scene." *Adams*, 407 U.S. at 146, 32 L. Ed. 2d at 617, 92 S. Ct. at 1923. The Court also noted that the informant might have been subject to sanctions for making a false complaint had the investigation proved the tip incorrect. *Adams*, 407 U.S. at 147, 32 L. Ed. 2d at 617, 92 S. Ct. at 1923. Just as in *Adams*, the informants here personally reported their tip to police (in addition to their phone call to the dispatcher), and the veracity of their complaint was readily ascertainable at the scene. The informants here also told the police the basis of their information about defendant, they provided their own contact information to police, and one of the witnesses even testified at trial.

Defendant argues that the trial court (and the arresting officer) found reasonable suspicion based on the combination of eyewitness testimony and the officer's observing defendant weave onto the lane dividing line. He then argues that his momentary weaving onto the lane divider was not sufficient cause for a traffic stop. However, the important question is the correctness of the trial court's ruling and not the correctness of its reasoning in reaching that result. *People v. Faletti*, 215 Ill. App. 3d 61, 64 (1991). In this case, contrary to defendant's argument, we need not reach the issue of whether defendant's momentary contact with the lane marker supported stopping him, because we hold that reasonable suspicion to stop defendant existed regardless of whether the officer witnessed his weaving onto the lane marker. Therefore, the lower court was correct in finding that police had reasonable suspicion to stop defendant's vehicle. Since evidence of intoxication was properly discovered pursuant to a legal stop, the trial court correctly denied defendant's motion to suppress that evidence. See *Gross*, 174 Ill. App. 3d at 71 (evidence of intoxication properly discovered pursuant to a legal stop).

In making our holding, we acknowledge the recent Second District holding in *Village of Mundelein v. Minx*, 352 Ill. App. 3d 216 (2004). In *Minx*, police acted on a tip from an unnamed informant in pulling over a driver. *Minx*, 352 Ill. App. 3d at 218-19. The informant was never identified, but he was considered reliable because he exposed himself to being identified at the time police formed reasonable suspicion. *Minx*, 352 Ill. App. 3d at 221. However, because the informant provided only vague allegations that the defendant was "driving recklessly" without indicating what specific observations led

him to that conclusion, the court found the tip itself to be unreliable. *Minx*, 352 Ill. App. 3d at 222. The court thus held that the police stop was unreasonable. *Minx*, 352 Ill. App. 3d at 222.

We agree with the *Minx* court's determination that the tipster was reliable because he exposed himself to being identified, even though he was never later identified. The proper focus in determining whether a tip is reliable is not whether the tipster's identity was ascertained after the seizure, but whether, at the time the officer formed reasonable suspicion, the tipster was identifiable, so that he was exposed to liability for a false tip. See *Illinois v. Gates*, 462 U.S. 213, 233-34, 76 L. Ed. 2d 527, 545, 103 S. Ct. 2317, 2330 (1983) (fact that informant exposes self to liability for a false tip makes tip more reliable); *Adams*, 407 U.S. at 146-47, 32 L. Ed. 2d at 617, 92 S. Ct. at 1923-24 (same). The reliability of the tip, then, is established not by the later identification of the tipster, but by the tipster's belief that he could be identified at the time he reported the information. See *Thompson*, 341 Ill. App. 3d at 848 (reasonable suspicion for a *Terry* stop based only on facts at the time of the stop).

Nevertheless, the holding in *Minx* does not affect our holding here, because the informants in this case were not only identifiable from the moment they told the police dispatcher they were following defendant's car, but they also provided police specific eyewitness observations in person to support their report that defendant was driving recklessly, and police independently corroborated some of their information. Thus, the tip in this case suffered from none of the vagueness that troubled the court in *Minx*.

■ Defendant's second contention on appeal is that the trial court should not have admitted his breath alcohol analysis test. Defendant argues that the breath analyzer did not function properly and that the trial court improperly relied on testimony saying that it did.

Police conformance with rules promulgated pursuant to section 11—501.2(a)(1) of the Illinois Vehicle Code (625 ILCS 5/11—501.2(a)(1) (West 2002)) creates a rebuttable presumption that a breath alcohol analysis test was accurate at the particular time a subject test was performed. The rules require that police periodically certify the accuracy of a breath analysis machine. 20 Ill. Adm. Code § 1286.200 (2004). The parties here do not dispute that the police were in compliance with the rules, because the breath analysis machine in this case was certified on February 12, 2002, and March 15, 2002. Therefore, there existed at trial a rebuttable presumption that the breath analysis machine gave an accurate reading at the time of defendant's arrest.

Defendant cites *People v. Boughton*, 268 Ill. App. 3d 170 (1994), in support of his position that the breath analysis results were inadmis-

sable. In *Boughton*, the court found that the prosecution did not lay a proper foundation for the admission of a breath analysis test result. *Boughton*, 268 Ill. App. 3d at 172-73. The police had certified the accuracy of the breath analysis machine within the time mandated by the administrative rules in effect at the time. However, after the defendant's test but before the breath analysis machine's next certification, the police took the machine out of service in order to make repairs on it. *Boughton*, 268 Ill. App. 3d at 172. The court in *Boughton* held that, since the rules required that the police carry the burden of showing compliance with the rules regarding certification of the breath analysis machine, they must also carry the burden of showing that the machine's malfunction between certifications did not affect the accuracy of the machine. *Boughton*, 268 Ill. App. 3d at 173. Since the prosecution in *Boughton* did not put forth any evidence to show the reason or nature of the repairs, it did not carry its burden. *Boughton*, 268 Ill. App. 3d at 172-73.

In the current case, just as in *Boughton*, the breath analysis machine's logbook shows that the machine was taken out of service for repairs. The State argues that *Boughton* can be distinguished because here, unlike in *Boughton*, the repairs occurred after the machine's second certification; that is, the machine was certified after defendant's test but before being taken out of service for repairs. Since the repair and the second certification occurred on the same day, though, that fact hardly distinguishes *Boughton* from the present case. However, *Boughton* is distinguishable from the current case in that here the logbook shows the reason for the repairs and the State adduced testimony to establish that the repairs did not affect the accuracy of defendant's test result. See *People v. Robinson*, 349 Ill. App. 3d 622, 628 (2004) (allowing breath analysis results despite holding in *Boughton*, because the State provided evidence that the machine was working properly).

At trial, the evidence showed an entry in the breath analysis machine's logbook, on the same day of its March 15 certification, stating that the machine had been taken out of service for "frequent false mouth alcohol" readings. The State adduced the testimony of Commander Jeffrey Fritz, a certified breath analysis machine operator with 25 years of experience, who described his administration of the breath analysis test on defendant. He stated that, prior to defendant's test, the machine recorded a 0.000 alcohol reading for clean air. He also stated that there was no indication that the machine was malfunctioning at the time of defendant's test.

Commander Fritz explained the meaning of the term "false mouth alcohol." He stated that, in his experience, a "mouth alcohol" reading

on the machine indicated that the subject had some kind of raw alcohol in his mouth. If the machine detected mouth alcohol, then, in his experience, it would abort the test and provide the police with no reading. Accordingly, had a "false mouth alcohol" problem occurred during defendant's breath analysis test, the machine would have aborted the test. Relying partially on Fritz's testimony, the trial court allowed the breath analysis reading to be admitted into evidence.

Defendant contends that the trial court improperly relied on Fritz's testimony as expert testimony on the meaning of the term "mouth alcohol," but, during Fritz's testimony, the trial court specifically stated that Fritz was testifying only as to what the term "means to him." The trial court also characterized his testimony as not "technical." Accordingly, Fritz's testimony was not expert testimony; he was testifying to facts he had observed through personal experience. See *Baggett v. Ashland Oil & Refining Co.*, 92 Ill. App. 2d 433, 445-46 (1968) (ironworker testifying as to operation of oil well and pump was lay witness testifying to facts he had observed through personal experience).

The State was required to demonstrate that the defect in the breath analysis machine did not affect its accuracy during defendant's test. We hold that the State made such a showing in this case and that defendant's breath analysis results were properly admitted.

We further note that, even if the breath analysis test had not been admitted into evidence, defendant still would have been properly convicted. Though the trial court noted defendant's breath analysis test results in its ruling, it also stated that there was "sufficient evidence *** to prove beyond a reasonable doubt that defendant was under the influence of alcohol, separate and apart from the [breath analysis test]." In support of its conclusion, the trial court cited the informant-witness's testimony that defendant was driving erratically, defendant's performance on the field sobriety tests, and the arresting officer's observations of defendant. The trial court stated that the breath analysis results "corroborated" the other evidence. Thus, even if the breath analysis test were improperly admitted into evidence, that error would be harmless beyond a reasonable doubt, and defendant's conviction would still stand. See *People v. Niemiro*, 256 Ill. App. 3d 904, 912 (1993) (harmless error to admit alcohol test where other "external indicators" established intoxication).

■ Defendant's third argument on appeal is that the State failed to prove beyond a reasonable doubt, as elements of his crimes, that his license was revoked for the grounds set forth in section 6—303(d) (625 ILCS 5/6—303(d) (West 2002)) and section 11—501(c—1)(3) (625 ILCS 5/11—501(c—1)(3) (West 2002)). The essence of defendant's argument

is that, in order to be convicted of Class 2 felony driving under the influence of alcohol or Class 4 felony driving while his license was revoked, the State was required to prove beyond a reasonable doubt, as an element of each crime at trial, that the aggravating factors were present. However, "[w]hen the State seeks an enhanced sentence because of a prior conviction," "the fact of such prior conviction *** [is] not [an] element[ ] of the offense ***. For the purposes of this [s]ection, 'enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification ***." 725 ILCS 5/111—3(c)) (West 2002). Therefore, the State need not prove prior commissions of driving under the influence beyond a reasonable doubt as an element of Class 2 felony driving under the influence (*People v. Thompson*, 328 Ill. App. 3d 360, 364-66 (2002)), nor must it prove prior commissions of driving while license revoked as an element of Class 4 felony driving while license revoked (*People v. Bowman*, 221 Ill. App. 3d 663, 666 (1991)). The existence of these predicate offenses is used after a defendant's conviction to increase the classification of his crime at sentencing. *Thompson*, 328 Ill. App. 3d at 364-66.

Here, the fact of defendant's prior convictions of driving under the influence, along with the fact that his license was revoked for driving under the influence, was used to raise the level of his conviction from a Class A misdemeanor of driving under the influence (625 ILCS 5/11—501(c)) (West 2002)), to a Class 2 felony (625 ILCS 5/11—501 (c—1)(3) (West 2002)). The fact that defendant's license was revoked for driving under the influence, along with the fact that defendant had been previously convicted of driving while his license was revoked, was used to raise the level of his conviction from a Class A misdemeanor of driving while license revoked (625 ILCS 5/6—303(a) (West 2002)), to a Class 4 felony (625 ILCS 5/6—303(d) (West 2002)).

Defendant relies on *People v. Miller*, 339 Ill. App. 3d 990, 992 (2003), and *People v. Mann*, 341 Ill. App. 3d 832, 840-41 (2003), to support his argument that the predicate crimes must be proved beyond a reasonable doubt as elements of the aggravated offenses. However, neither case stands for the proposition for which defendant uses it. *Miller* merely states that the elements of driving with a suspended license are included in the elements of aggravated driving under the influence of alcohol, and, thus, the defendant could not be convicted of both under one-act, one-crime principles. *Miller*, 339 Ill. App. 3d at 992. *Mann*, likewise, addresses a defendant's argument concerning whether his prosecution for driving while license revoked was for the same conduct as an aggravated-driving-while-license-revoked charge under one-act, one-crime principles. *Mann*, 341 Ill. App. 3d 832.

Neither case discusses the elements of the crimes that the State must prove beyond a reasonable doubt at trial.

Defendant further argues that the above case law applies only to the requirement of proving the fact of a prior conviction as an aggravating circumstance, and not to the requirement of proving revocation for certain grounds. We disagree. In *Bowman*, the defendant was convicted of aggravated driving with license revoked because he had a previous driving-while-license-revoked conviction and because his original revocation was for driving under the influence. *Bowman*, 221 Ill. App. 3d at 664-66. The State in *Bowman* was not required to show the defendant's prior convictions, or the grounds for those prior convictions, until sentencing. *Bowman*, 221 Ill. App. 3d at 665-66. We further note that requiring the State to prove the grounds for a conviction or revocation beyond a reasonable doubt at trial would effectively require the State to prove a prior conviction as an element of the crime, which would contravene the plain language of section 111—3(c)) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—3(c)) (West 2002)). Accordingly, we reject defendant's argument. Defendant's prior convictions were not required to be proven beyond a reasonable doubt as elements of his crimes here.

Defendant also argues that the State failed to establish at sentencing that at the time of his arrest his license had been revoked for driving under the influence, as required under the aggravated versions of both statutes. However, the presentencing report in this case reveals not only defendant's prior driving-under-the-influence convictions, but also the fact that at the time of his arrest his license was revoked due to those prior driving-under-the-influence convictions. A court properly may consider a presentencing report to determine a defendant's criminal record; such a report is a reliable source for the purpose of inquiring into a defendant's criminal history. *People v. Williams*, 149 Ill. 2d 467, 491 (1992). Therefore, defendant's argument must fail.

■ Defendant's final argument on appeal is that his conviction of Class 4 felony driving while license revoked must be vacated because it merges with his conviction of Class 2 felony driving under the influence. Under the one-act, one-crime rule, a court must first determine whether a defendant's conduct consisted of separate acts or a single physical act. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996); *People v. King*, 66 Ill. 2d 551, 566 (1977). Multiple convictions are improper if they are based on precisely the same physical act. *Rodriguez*, 169 Ill. 2d at 186. If the court determines that the defendant committed multiple acts, the court then goes on to determine whether any of the offenses are lesser included offenses. *Rodriguez*, 169 Ill. 2d at 186. As long as there are multiple acts as defined in *King*, their interrelation-

ship does not preclude multiple convictions. *Rodriguez*, 169 Ill. 2d at 188-89 (in the context of home invasion and aggravated criminal sexual assault). An act is any overt or outward manifestation that will support a different offense. *King*, 66 Ill. 2d at 566. A person can be guilty of two offenses when a common act is part of both offenses. *People v. Forcum*, 344 Ill. App. 3d 427, 447 (2003).

Here, each of defendant's convictions is supported by a separate physical act, because driving while license revoked is a separate act from driving under the influence. *People v. Lavallier*, 187 Ill. 2d 464, 468-69 (1999) (describing driving while under the influence of alcohol as a single act); *People v. Quigley*, 183 Ill. 2d 1, 9 (1998) ("act of driving while intoxicated was independent of and had no relationship to the simultaneous act of driving while license revoked" for purposes of joinder), citing *People v. Navis*, 24 Ill. App. 3d 842, 846 (1974); *People v. Bennett*, 331 Ill. App. 3d 198, 203 (2002) (describing driving while under the influence of alcohol as an act for purposes of the one-act, one-crime rule).

Defendant argues that the only act in this case was his "driving." Though driving was involved in both of defendant's crimes, each of his convictions was due to a separate offense based on separate conduct. See *People v. Adolphson*, 73 Ill. App. 3d 611, 613 (1979) (reckless driving and transportation of liquor are separate acts because "[a]lthough these acts may be done simultaneously, they are completely separate"). The acts to be considered here are "driving while license revoked" and "driving while intoxicated," not simple "driving." While "driving" may be a state of action, it is not an overt act that will support a criminal offense. See *King*, 66 Ill. 2d at 566. The acts to be considered in applying the one-act, one-crime rule are defendant's *culpable* physical acts. There is nothing criminal in driving, *per se*; if defendant simply had been driving, then he would have committed no criminal act. However, driving while intoxicated is a criminal act, as is driving while license revoked. Defendant was sentenced based on those two separate, but simultaneous, acts and not based simply on his act of driving.

Defendant argues that *Navis* does not apply here. *Navis* stated that the two acts were separate, but it came before the supreme court's announcement of the one-act, one-crime rule in *King*. *Navis*, 24 Ill. App. 3d at 846. However, defendant ignores *Quigley*, 183 Ill. 2d 1, which was decided after *King*. In *Quigley*, the supreme court stated that driving while intoxicated (as opposed to simple "driving") was an act, and it cited *Navis* with approval. *Quigley*, 183 Ill. 2d at 6-11. Defendant also argues that *Navis* is distinguishable because it considered the question of joinder and not the application of the one-

act, one-crime rule. See *Navis*, 24 Ill. App. 3d 842. However, *Navis* was cited in *Quigley*, which quoted the test for compulsory joinder: whether several criminal offenses were "based on the same act." *Quigley*, 183 Ill. 2d at 6-7; *cf. Rodriguez*, 169 Ill. 2d at 186 (multiple convictions are improper if they are based on precisely the same physical act). Regardless of the applicability of *Navis*, *Quigley*, and the other cases cited above, we hold that, for purposes of the one-act, one-crime rule, driving while intoxicated is a separate act from driving while license revoked.

The purpose of the one-act, one-crime rule is to prevent the State from carving out multiple offenses from the same culpable conduct. See *People v. Harvey*, 211 Ill. 2d 368, 389 (2004). Defendant argues that the State is carving multiple offenses out of his single continuous act of driving. However, as explained above, defendant's driving was not his culpable conduct in this case; his culpable conduct was his driving while intoxicated and his driving while license revoked. The State is not carving out separate offenses to punish the same conduct; it is punishing both of defendant's culpable acts. Despite occurring simultaneously, defendant's driving while intoxicated was one act (see *Lavallier*, 187 Ill. 2d at 469; *Quigley*, 183 Ill. 2d at 9-11; *Bennett*, 331 Ill. App. 3d at 203), and his driving while his license was revoked was another.

Under the second part of the one-act, one-crime test, defendant concedes that Class 4 felony driving while license revoked is not a lesser included offense of Class 2 felony driving under the influence by agreeing that "the State correctly points out that [Class 4 felony driving while license revoked] requires a second violation of [section 6—303], while [Class 2 felony driving under the influence] requires only a single violation of that section."

Defendant relies on *Miller*, 339 Ill. App. 3d at 992, to support his proposition that his convictions should be merged. However, *Miller* merged driving under a suspended license with aggravated driving under the influence, because the former was a lesser included offense. *Miller*, 339 Ill. App. 3d at 992. In the present case, by contrast, defendant was convicted of Class 4 felony driving while license revoked and Class 2 felony driving under the influence. As discussed above, the former requires a previous conviction of driving while license revoked and the latter does not. Therefore, defendant's convictions of both crimes must stand.

118

## III. Conclusion

For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GROMETER and CALLUM, JJ., concur.