# Illinois Official Reports

## Appellate Court

---

### *People v. Topor*, 2017 IL App (2d) 160119

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TYLER W. TOPOR, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-16-0119 |
| Filed | March 28, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 15-CF-110; the Hon. C. Robert Tobin III, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michelle J. Courier, State's Attorney, of Belvidere (Lawrence M. Bauer and Marshall M. Stevens, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Michael J. Pelletier, Thomas A. Lilien, and Erin Shanahan Johnson, of State's Appellate Defender's Office, of Elgin, for appellee. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice McLaren concurred in the judgment and opinion. |

**OPINION**

¶ 1    The State appeals from the judgment of the circuit court of Boone County granting defendant Tyler W. Topor's motion to quash his arrest and suppress evidence. Because an identified citizen informant reported, via 911, the smell of burnt cannabis coming from defendant's vehicle, the police had reasonable suspicion to stop defendant's vehicle. Thus, we reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant was indicted on one count of unlawful possession with intent to deliver a controlled substance (codeine) within 1000 feet of a senior housing complex (720 ILCS 570/401(d), 407(b)(2) (West 2014)), one count of unlawful possession of a controlled substance (acetaminophen/codeine) (720 ILCS 570/402(c) (West 2014)), one count of unlawful possession with intent to deliver a controlled substance (alprazolam) within 1000 feet of a senior housing complex (720 ILCS 570/401(g), 407(b)(5) (West 2014)), one count of unlawful possession of a controlled substance (alprazolam) (720 ILCS 570/402(c) (West 2014)), and one count of unlawful possession with intent to deliver cannabis (720 ILCS 550/5(c) (West 2014)). Defendant filed a motion to quash his arrest and suppress evidence.

¶ 4    The following evidence was established at the hearing on the motion to quash and suppress. On the evening of May 29, 2015, Officer Todd Moore of the Belvidere police department was parked in his squad car within sight of a McDonald's restaurant on Chrysler Drive. He was talking with Detective Robert Kozlowski of the Belvidere police department, who was sitting in his police vehicle next to Officer Moore's.

¶ 5    At about 10:44 p.m., Officer Moore received a radio dispatch. The dispatcher advised that a citizen had called 911 and reported that, while he was seated in his truck in the McDonald's drive-up lane on Chrysler Drive, the smell of cannabis was coming from the vehicle immediately behind him. The caller described the vehicle as a silver Ford with the words "Harvard Ford Courtesy Car" on each of its front doors. The caller also provided the license plate number and reported that there were two occupants in the Ford.

¶ 6    As Officer Moore drove toward the McDonald's, the dispatcher advised him that the caller, who was still on the line, could see the Ford facing the opposite direction of Officer Moore's squad car at an intersection. As the Ford passed him, Officer Moore turned to follow it. When the Ford pulled up to a gas pump at a nearby gas station, Officer Moore pulled in behind it and activated his emergency lights.[1]  Shortly thereafter, Detective Kozlowski arrived.

¶ 7    When Officer Moore approached the Ford, defendant, who was driving, was smoking a cigarette. Officer Moore told defendant that he had received a complaint that someone in the Ford was smoking cannabis. According to Officer Moore, he thought that he could smell, in addition to the cigarette, "burning cannabis but [he] was unsure" because of the wind direction. Detective Kozlowski, who had approached the Ford on the passenger side (downwind), told

_____

[1]We note that the trial court found that a seizure occurred because Officer Moore activated his emergency lights. The State does not contend otherwise. Thus, we do not address the issue of whether there was a seizure when Officer Moore pulled in behind defendant's vehicle at the gas station.

Officer Moore that he could smell burnt cannabis. Based on his drug training and prior investigations, Detective Kozlowski was familiar with the smell of burnt cannabis.

¶ 8 After Detective Kozlowski told him about the cannabis smell, Officer Moore had defendant step out of the Ford. For safety reasons, he patted down defendant, handcuffed him, and placed him in the squad car. Officer Moore then approached the Ford and saw, through the open driver's side door, prescription pill bottles and a clear plastic baggie containing "green leafy plant material." Based on his police training and experience, he believed that the substance in the baggie was cannabis.

¶ 9 The trial court issued a written decision granting the motion to quash and suppress. The court found that the citizen informant was not sufficiently reliable to justify the stop of defendant's vehicle, because the record did not show that the informant was familiar with the smell of cannabis. The court then granted the State's motion to reopen the proofs so the court could listen to the 911 recording.

¶ 10 The 911 caller stated that the occupants of the vehicle behind him at the McDonald's were smoking "some massive pot" and that it was "freakin' reekin' like hell in [his] truck." After the dispatcher informed the caller that an officer was en route, the caller stated that the Ford was at a light facing north and that a squad car was on the opposite side of the intersection facing south. The caller provided the license plate number of the Ford. The caller also gave his full name and telephone number.

¶ 11 After considering the 911 call, the trial court reiterated its decision to grant the motion to quash and suppress. After the court denied the State's motion to reconsider, the State filed a certificate of impairment (see Ill. S. Ct. R. 604(a)(1) (eff. Dec. 3, 2015)) and a timely notice of appeal.

¶ 12                                        II. ANALYSIS

¶ 13 On appeal, the State contends that Officer Moore had reasonable suspicion to stop defendant's vehicle because the citizen informant was sufficiently reliable, notwithstanding that he did not provide any information as to how he was familiar with the smell of burnt cannabis. Defendant responds that, even though the caller identified himself, he was unreliable, as he did not indicate how he knew the smell of burnt cannabis.

¶ 14 In reviewing a trial court's ruling on a motion to suppress evidence, a reviewing court applies a two-part standard. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). Under that standard, a reviewing court reviews a trial court's findings of fact only for clear error and must give due weight to any inferences drawn by the trial court from those facts. *Luedemann*, 222 Ill. 2d at 542. Put another way, a reviewing court gives great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *Luedemann*, 222 Ill. 2d at 542. A reviewing court, however, remains free to independently assess the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted. *Luedemann*, 222 Ill. 2d at 542. Accordingly, the court reviews *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Luedemann*, 222 Ill. 2d at 542-43. In this case, because the facts are undisputed, we review the trial court's ruling *de novo*.

¶ 15 Generally, the police may seize an individual only if they first obtain a warrant supported by probable cause. *People v. Miller*, 2014 IL App (2d) 120873, ¶ 21. However, an officer may

make an investigatory stop, without a warrant or probable cause, if the officer reasonably believes that the person stopped is committing, has committed, or is about to commit a crime. *Miller*, 2014 IL App (2d) 120873, ¶ 21 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

¶ 16    Facts giving rise to reasonable suspicion need not be based on personal observations by an officer. *Miller*, 2014 IL App (2d) 120873, ¶ 23. Rather, facts supporting reasonable suspicion may be based on information that the public provides. *Miller*, 2014 IL App (2d) 120873, ¶ 23. Where a citizen informant reports criminal activity to the police, the information need possess only some indicia of reliability to justify an investigatory stop. *Miller*, 2014 IL App (2d) 120873, ¶ 23. To that end, the information from a citizen informant need have only a minimum of corroboration or other verification of its reliability. *Miller*, 2014 IL App (2d) 120873, ¶ 24.

¶ 17    Although a citizen informant is no longer afforded a presumption of reliability, the citizen informant has greater reliability than the typical criminal informant. *Village of Mundelein v. Minx*, 352 Ill. App. 3d 216, 221 (2004). There are many factors that must be considered when determining the reliability of information provided by a citizen. *Minx*, 352 Ill. App. 3d at 221. Those factors include whether the citizen informant identified himself, offered to sign a complaint, or witnessed the alleged crime, and whether the information was independently corroborated. *Minx*, 352 Ill. App. 3d at 221. Factors that weigh against reliability include whether the informant was paid, did not witness the alleged offense, or failed to identify himself. *Minx*, 352 Ill. App. 3d at 221.

¶ 18    Before addressing the reliability of the information in light of the relevant factors, we emphasize that the standard required for the stop was reasonable suspicion. That standard is less demanding than probable cause, not only in the sense that it can be established with information that is different in quality or content from that required to establish probable cause, but also in that it can be based on information that is less reliable than that required to establish probable cause. *Alabama v. White*, 496 U.S. 325, 330 (1990) (citing *Adams v. Williams*, 407 U.S. 143 (1972)). Thus, where an unverified tip by a known informant might not be reliable enough to establish probable cause, it nonetheless might be sufficiently reliable to justify an investigatory stop. *White*, 496 U.S. at 330 (citing *Adams*, 407 U.S. at 147). Therefore, those cases that require a certain level of training and experience to identify reliably the smell of cannabis to support probable cause (see, *e.g.*, *People v. Stout*, 106 Ill. 2d 77, 87 (1985)) do not apply in this context.

¶ 19    In this case, the various factors demonstrate the reliability of the information. First, the citizen informant called 911 and identified himself, providing his full name and telephone number. By calling 911 and identifying himself, he subjected himself to potential prosecution if the information was false. See *People v. Shafer*, 372 Ill. App. 3d 1044, 1050-52 (2007). An identified informant lends great weight to the reliability of the information.

¶ 20    Second, much of the information was corroborated before the stop. Officer Moore observed the vehicle as described, including the license plate. Also, he saw the Ford only a short distance from the McDonald's. That corroboration lent further reliability to the information.

¶ 21    Third, there is no indication that the citizen informant received any benefit for providing the information. Rather, he was merely a happenstance witness who conscientiously reported the crime, including following the Ford and providing its location and direction of travel to the police.

¶ 22 Fourth, as noted, the citizen informant "witnessed" the alleged offense, via his sense of smell. Defendant contends, however, that the information was not reliable, because the citizen informant never indicated to the police how he was familiar with the smell of burnt cannabis. Neither party cites, nor do we find, any case addressing the issue of whether the police may reasonably rely on a citizen's report of the smell of burnt cannabis without first ascertaining how the citizen knows the smell. However, we find instructive *State v. Lichty*, 835 P.2d 904 (Or. 1992) (*en banc*). There, an officer stopped the defendant in reliance on a named citizen's report that " 'a bag of coke' " had fallen out of a lost wallet that was subsequently claimed by a passenger in the defendant's vehicle. *Lichty*, 835 P.2d at 905. The defendant argued that the stop was invalid because, lacking any knowledge of the citizen's ability to identify cocaine, "the officer could not reasonably rely on [the citizen's] statement that she saw cocaine, at least without further inquiry." *Lichty*, 835 P.2d at 907. The Oregon Supreme Court rejected the argument, noting that the defendant "asks for more than the reasonable suspicion standard requires." *Lichty*, 835 P.2d at 907. Specifically, the court observed that citizens "often speak in the shorthand of opinions or conclusions, not in the form of a recitation of pure fact." *Lichty*, 835 P.2d at 907. Thus, given the general knowledge that cocaine is a "white powdery substance," the officer had a reasonable suspicion that the wallet indeed contained cocaine. *Lichty*, 835 P.2d at 908.

¶ 23 Here, the same reasoning applies. As noted, the standard here is reasonable suspicion, not probable cause. Although "establishing probable cause requires some evidentiary foundation for an officer's identification of a particular odor as that of burnt marijuana" (*People v. Smith*, 2012 IL App (2d) 120307, ¶ 13), the reasonable-suspicion standard does not require an officer to obtain that same foundation from a citizen. In reporting that the occupants of the Ford were smoking "some massive pot," the citizen here was using the same kind of shorthand that the citizen in *Lichty* used. Given that the smell of burnt cannabis, like the appearance of cocaine, is "distinctive" to much of the general public (*People v. Allen*, 375 Ill. App. 3d 810, 815 (2007)), Officer Moore was entitled to stop defendant in reliance on the citizen's report.

¶ 24 In so holding, we note that the citizen did not indicate any uncertainty about whether the smell he detected was the smell of burnt cannabis. (Indeed, he demonstrated unequivocal confidence.) Thus, we note also that we need not, and do not, decide whether the police must inquire further when a citizen indicates such uncertainty. We hold only that, under the facts of this case, the citizen did not need to explain how he was familiar with the smell of burnt cannabis before Officer Moore could rely on his report to formulate a reasonable suspicion to effect a stop.

¶ 25 Based on the totality of the circumstances, the information provided by the citizen informant via 911 was sufficiently reliable to support a reasonable suspicion to stop defendant's vehicle. Accordingly, the trial court erred in ruling otherwise.

¶ 26                                     III. CONCLUSION

¶ 27 For the reasons stated, we reverse the judgment of the circuit court of Boone County and remand for further proceedings.

¶ 28 Reversed and remanded.